IKEY WEATHERED v. THE STATE.

No. 17439. Delivered March 27, 1935.

264

The opinion states the case.

*Otis Rogers* and *Joe Spurlock*, both of Fort Worth, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of a conspiracy to commit burglary, and his punishment was assessed at confinement in the State penitentiary for a term of two years.

Omitting the formal parts, the indictment reads as follows:

"That Ikey Weathered, Vick Bradley, and Edgar Hammonds, on or about the 9th day of April, A. D. 1934, and anterior to the presentment of this indictment, in the county and State aforesaid, did then and there unlawfully conspire, combine, confederate and enter into a positive agreement together and between themselves unlawfully, by force, to break and enter a house then and there occupied and controlled by Mrs. Richard Morris, and then and there situated in Bosque County, Texas, with the intent then and there fraudulently to take therefrom corporeal personal property therein being and then and there belonging to and being in the possession of the said Mrs. Richard Morris, from the posession of the said Mrs. Richard Morris, without the consent of the said Mrs. Richard Morris, and with the intent then and there to appropriate the same to the use and benefit of them, the said Vick Bradley, Ikey Weathered and Edgar Hammonds, and with the intent then and there to deprive the said Mrs. Richard Morris of the value of the same, against the peace and dignity of the State."

The testimony adduced upon the trial shows that on Sunday afternoon of April 8, 1934, Pearl Benson, the sheriff of Bosque County, met Vick Bradley, one Stroud, and one Leonard at the Brazos river bridge, at which time Bradley and Benson had a

conversation, the nature of which is not disclosed by the record. Benson, the sheriff, had theretofore been at Cleburne to see Bradley but the nature of his business on this occasion is not disclosed by the record. However, the record does show that on Sunday night after Benson, the sheriff, and Bradley had met at the river bridge, the sheriff and A. L. Ballew went to the town of Morgan at about 10 p. m. where they met Will Ligon, Mr. Stroud and Mr. Leonard, who then secreted themselves at various places awaiting developments. At about 1:45 a. m. the appellant came down the street towards the postoffice building, passed by it and turned the corner. Two men carrying a bundle came on behind flashing a light into the store buildings as they went, and when they reached the postoffice they stopped and flashed a light in the building. After this a man started across a street towards White's filling station in which Benson, the sheriff, had stationed himself. When this man reached a point about the middle of the street Benson fired upon him from a raised window of said filling station, mortally wounding the man, who proved to be Vick Bradley. The other two men made their escape. An investigation disclosed that a sack containing two large hammers and a pinch bar had been left in front of the postoffice door. The sheriff further testified for the State as follows: "I was informed that a job was to be pulled at Morgan on that Sunday night. I got this information about 9:30 p. m. by telephone from Mr. Stroud at Cleburne. I did not recognize any of the three men who I saw at the postoffice that night. I knew Vick Bradley but I did not recognize him at the time I shot him. I would not have killed him if he had stayed where he belonged. I knew Vick Bradley was not going to be involved in this job at Morgan. Bradley was not to be on the street that night. He was not to be anywhere around when they robbed the place." Will Ligon testified for the State that he met the appellant about two or three weeks before the trial, at which time the appellant said, "I am going to admit I was there. I knew I was being framed. I had no intention of going into any building down there. I knew Bradley was framing me and I went there to see how far he would go. I did not intend to go in any postoffice or any other building"; that Ikey Weathered also told him that he came to Morgan at Bradley's suggestion and at his instance. Mrs. George Stanley testified for the appellant as follows: "Vick Bradley was my brother. I was at the hospital when Vick died. After Vick realized that he was going to die he told me that he knew he had to die. He said he had no intention of going into the post-

office at Morgan. He said it was a cold-blooded murder and Pearl Benson knows it. He said that they tried to get him to do this before but he did not do it. He said he was to get fifty or one hundred dollars out of it. He said the way Pearl Benson had planned it was for him to get these boys to pull this job and when the boys were inside of the building he was to get in his car and get away and that they would never find him. He told me to tell Pearl Benson that he was going to die like a man with his mouth closed and would not tell all he could on him."

The appellant earnestly contends that the evidence is insufficient to sustain the conviction on the charge of conspiracy to commit burglary. Art. 1622, P. C., defines a conspiracy to be an agreement between two or more persons to commit a felony. Art. 1624, P. C., reads as follows: "Before a conviction can be had for the offense of conspiracy, it must appear that there was a positive agreement to commit a felony. It will not be sufficient that such agreement was contemplated by the parties charged." The controlling questions in this case are:

First, has the State shown a positive agreement between Vick Bradley, Ikey Weathered and Edgar Hammonds to commit the offense of burglary at Morgan on the night in question? We think not. While there are circumstances proven which would, in the absence of any testimony on the part of the State showing the object and purpose of the alleged conspirators in being at the town of Morgan, tend to lead an unbiased mind to such a conclusion, but the State's testimony showed that the sheriff knew that Vick Bradley was not going to be involved in the job (whatever that may have embraced), that the sheriff would not have killed Bradley if he had stayed where he belonged, that Bradley was not to be on the street that night. From the foregoing testimony it is obvious that Vick Bradley did not intend to commit burglary or aid in the commission thereof. His participation in the alleged conspiracy was not sincere; it was simulated. Hence, there was no union or meeting of the minds on the part of Bradley with the other parties so as to constitute him a coconspirator. His acts, conduct and presence was to deceive and mislead his alleged coconspirators. His mind did not concur and unite with the minds of his alleged coconspirators in a criminal intent to commit the alleged offense. See Woodworth v. State, 20 Texas App., 375. But this would not relieve the appellant from being prosecuted and convicted of said offense provided the testimony showed that appellant and Hammonds had entered into a conspiracy to commit the offense, which brings us to a consideration of the

next question, namely, is the State's testimony sufficient to show a conspiracy between appellant and Hammonds? We think not. There is no testimony to show that Edgar Hammonds was present at Morgan on the night that Vick Bradley was mortally wounded. There is no testimony that appellant and Hammonds were friends; that they associated together or were seen together either at, before, or since the time of the commission of the alleged offense. Of course, there is testimony that a third party was at Morgan with Bradley and appellant, but who this party was is not disclosed by the record. To meet the allegations in the indictment the State was required to show, either by direct or circumstantial evidence, that appellant and Hammonds had entered into a conspiracy to commit burglary; otherwise, there would be a variance. It occurs to us that in this respect the State's testimony falls short of meeting the legal requirements that the proof must correspond to the allegations.

We also observe that the State proved by Mr. Ligon that he met the appellant some two or three weeks prior to the trial, at which time appellant told the witness that he would admit that he was at Morgan at the time Bradley was shot, but that he did not go there to commit burglary; that he knew he was being framed by Bradley and wanted to see how far Bradley would go. This was in the nature of an exculpatory statement and the State was bound thereby unless the other testimony demonstrated that the same was false. See Huffman v. State, 262 S. W., 76.

There are some other questions raised relative to the court's charge which we need not discuss in view of the disposition we are making of this case.

Having reached the conclusion that the testimony is insufficient to sustain the conviction on the charge of a conspiracy to commit burglary, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.