UNITED STATES of America,
Plaintiff-Appellee,

v.

Rex Don STAMPS, Defendant-Appellant.

No. 27755.

United States Court of Appeals,
Fifth Circuit.

June 15, 1970.

---

Jack J. Taffer (Court appointed), Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Neal R. Sonnett, William C. White, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before PHILLIPS,* BELL and SIMPSON, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Stamps was charged by indictment with receiving, retaining and concealing five stolen United States Postal Money Orders having a value of $500, knowing them to have been stolen, and with intent to convert them to his own use, in violation of 18 U.S.C.A. § 641.

He waived trial by jury and was tried, found guilty, and sentenced by the court. He has appealed.

Stamps filed a motion to suppress certain evidence. He did not testify, either at the hearing on his motion to suppress or at the trial. There is no substantial dispute as to the facts.

On October 31, 1968, William H. Collins was General Manager of the Biscayne Terrace Hotel [1] in Miami, Florida. On that date the Hotel was engaged in redecorating the interior of its rooms, completing one floor at a time.

Prior to 1:30 p. m. on October 31, 1968, Stamps had registered as a guest at the Hotel, under the name "William Saunders," and was occupying a room in the Hotel. At about that hour, Collins unlocked the door of such room and entered it for the purpose of determining whether it needed repainting. The beds were made up by the maid, but Collins was not certain whether the room had been fully cleaned.

While inspecting the room to determine whether it needed painting, Collins observed an envelope standing on its end in the room's wastebasket, which was otherwise empty. Collins picked up the envelope. He took it with him when he left the room about three or four minutes after entering it and returned with the envelope to his office in the lobby. Stamps was not in the room at the time Collins was making such inspection.

Printed on the upper left-hand portion of the address side of the envelope were the words and figures, "The Biscayne Terrace. 340 Biscayne Blvd. Miami, Florida 33132. Overlooking Beautiful Biscayne Bay." To the left of that address was a picture of the Hotel. On the lower righthand portion of the address side of the envelope there was an imprint of a post office validating stamp, used to validate money orders. The imprint had an inner and an outer circle. Between the two circles were the words and figures, "Seattle, Wash. BR No. 9 USP." In the inner circle there appeared, "OCT 25 1968."

On returning to his office, Collins immediately called the Miami Police Department and reported that there was a suspicious person in the Hotel.

Rodney A. Sayre was a police officer of the Miami Police Department and was engaged in radio patrol on October 31, 1968. He received a code message over the police communication system and thereupon went to the Hotel to investigate a suspicious person. He arrived at the Hotel about 2 p. m., October 31, 1968, and contacted Collins. The latter reported to Sayre that he had found the envelope in Stamps's room and showed it to Sayre.

Because the validating imprint on the envelope contained the words and figures, "Seattle, Wash. BR No. 9 USP OCT 25, 1968," Sayre called William L. Nestor, a United States Postal Inspector stationed in Miami, and inquired as to whether there had been any post office burglaries or thefts at the Seattle, Washington United States Post Office, Branch

---

\* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called the Hotel.

No. 9. Nestor, in turn, called a Postal Inspector in Seattle. As a result of the information he received in response to his call, Nestor called Sayre at the Hotel and informed him there had been a burglary at such Branch Office No. 9 on October 27 or 28, 1968.[2] A short time before Nestor called Sayre, Stamps returned to the Hotel, went to his room, and had a bellboy bring his bag to the lobby. During the time Nestor was informing Sayre of the burglary by telephone, Stamps checked out and was about to leave the Hotel.

Sayre was wearing a police uniform. Stamps was wearing dark glasses, a felt hat pulled down over his eyes, and had a band-aid on his head.

Sayre had seen Stamps's registration on the Hotel register under the name "William Saunders." As Stamps was about to leave the Hotel, after checking out, Sayre abruptly broke off the telephone conversation with Nestor and approached Stamps and said, "William Saunders." Stamps then turned around and said, "Yes." Sayre then asked Stamps, "Are you William Saunders?" Stamps replied, "Yes, I am." Sayre then said, "May I see your identification, please?" Stamps then handed Sayre his identification, which bore the name "Rex Don Stamps." Sayre then said, "Is that your name?" Stamps answered, "Yes." Sayre then said to Stamps, "You are under arrest for giving false information to a police officer."

Sayre then took Stamps to his police automobile, which was parked directly in front of the main entrance to the Hotel, and read from a card a statement which warned Stamps and advised him of his rights.[3] Stamps was carrying an attache brief case when he was arrested, and retained it. Sayre then proceeded immediately to transport Stamps to the Miami Police Station. On arriving at the Detective Bureau, Sayre asked Stamps to remove his coat. Stamps did so and handed his coat to Sayre. Sayre then examined Stamps's waistband and his legs. He then looked in the pocket of Stamps's coat and found United States Postal Money Orders bearing the imprint of the validating stamp of the Seattle, Washington United States Post Office, Branch No. 9.

Sayre then said to Stamps, "Do you mind if I look in your attache brief case?" Stamps answered, "No." Sayre opened the brief case and found therein additional United States Postal Money Orders bearing the imprint of such validating stamp and some barbiturates. Sayre then made out his field arrest report, which stated he had arrested Stamps at 340 Biscayne Boulevard on October 31, 1968, at 2:30 p. m., for giving false information to a police officer. He then took Stamps to the booking desk, filed his report, and went off duty.

Stamps filed a motion to suppress the evidence found on the search of his coat and brief case.

On November 4, 1968, two complaints were filed in the Miami Municipal Court, one of which charged that Stamps, on October 31, 1968, did make a false and misleading report to a police officer of the City of Miami, which report interfered with or hindered the proper operation of the police officer's duties or his investigation, and the other charged him with the possession of methamphetamine, a barbiturate, not procured by a prescription of a physician. Thereafter, such complaints were dismissed by the City Attorney, because Stamps had been charged in the United States District Court with a federal offense.

At the hearing on the motion to suppress, Stamps called Sayre and Collins as his witnesses. Their testimony and exhibits introduced at the hearing on the motion established the facts above stated.

Counsel for Stamps and the United States agreed that the court should defer ruling on the motion to suppress, and

---

2. It in fact occurred on October 24 or 25, 1968.

3. There is no claim of a failure of Sayre to properly warn and advise Stamps of his rights.

subject to such motion, should proceed to hear the evidence on the charge in the indictment.

At the trial on the indictment, the evidence established the following additional facts.

The Seattle, Washington United States Post Office Branch No. 9 was located in a drug store. Between 9 p. m., October 24, 1968, and 3 a. m., October 25, 1968, the drug store was broken into and the validating stamp of such branch office, its money order machine, which is used to stamp on money orders when sold, the amount thereof, and the money orders found in Stamps's coat and brief case were stolen. Also, the narcotics drawer in the drug store was rifled and part of its contents stolen.

During the search of Stamps at the Detective Bureau, Sayre found in Stamps's right-hand coat pocket an envelope containing 12 United States Postal Money Orders, each for the sum of $100, and each bearing the imprint of the validating stamp of the Seattle, Washington United States Post Office, Branch No. 9, including "OCT 25 1968." Among the 12 money orders so found, were the five described and identified by their respective numbers in the indictment. Sayre also found one money order in the left-hand pocket of Stamps's coat for the sum of $100 and bearing the same validating stamp imprint. In the attache brief case, Sayre found 41 additional money orders, each for $100, and each bearing the same validating stamp imprint.

Every post office has its own separate validating stamp. Sayre also found in the attache brief case the validating stamp of the Seattle, Washington United States Post Office, Branch No. 9.

■ Stamps contends that there was no evidence that the false information he gave to Sayre interfered with or hindered the proper operation of Sayre's duty or investigation as a police officer, and hence the arrest was unlawful and the

search of Stamps at the Detective Bureau was not incident to a valid arrest and was therefore illegal.

If Stamps, instead of falsely stating to Sayre that his name was William Saunders, had told Sayre that his true name was Rex Don Stamps, it certainly would have simplified Sayre's investigation of Stamps as a suspect of the post office burglary. The identity of a person being investigated with respect to the commission of a crime is usually important. If Stamps had used his true name in registering at the Hotel, it would have tended to allay the suspicion of him which had been engendered by the imprint of the validating stamp of the burglarized branch post office on the envelope found in his room. But if he had registered under a fictitious name, it would have greatly increased the basis for believing he was connected with such burglary. We are of the opinion that the trial court was justified in concluding from the evidence that the false statement, at the time it was made, hindered the investigation of Stamps being made by Sayre, even though it was only for a short time, and even though Sayre thereafter was able to obtain an admission from Stamps that his true name was Rex Don Stamps. We conclude the arrest was lawful.

■ Since the arrest was lawful, the police officer had the right, before the incarceration of Stamps, to examine his person, his clothing, and his personal effects, including the brief case he was carrying. Such examination was proper, in order to ascertain if Stamps had anything in his possession that might create a danger to the Police Department personnel, or with which he might make an escape.[4]

■ Neither the fact that the charges filed against Stamps in the Municipal Court were dismissed by the City Attorney after Stamps was charged with a more serious federal offense nor any other facts shown by the record afford any basis for the contention that the arrest

---

4. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685; Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777.

was a mere pretext to obtain a search for evidence of Stamps's connection with the post office burglary. Such dismissal, under the circumstances, was normal practice and it was quite natural for a police officer to arrest for a city offense committed in his presence, rather than for a federal offense for which he may have felt he did not have probable cause, and the search was not general nor exploratory, but was limited to the legitimate purposes above stated.

■ Where, as here, an officer in making, after a lawful arrest of a person, a search that was lawful and kept within proper limits, discovered the fruits of another crime, unrelated to the one for which the arrest was made, and seized such fruits, they were admissible in evidence on a trial of the person for the other offense.[5] Here, the things seized were property of the United States, unlawfully in Stamps's possession.

■ The contention that the court denied counsel full and complete cross-examination of an essential witness concerning a material fact is clearly without merit.

The questions to which objections were sustained were addressed to Sayre on direct examination, when he was testifying as a witness called by and for Stamps. It was direct and not cross-examination. Sayre was in no sense an adverse witness, and counsel for Stamps did not contend he was nor ask the court's permission to cross-examine him. The court allowed counsel for Stamps much latitude in the examination of Sayre. It exercised much patience and permitted counsel for Stamps to ask leading questions and elicit answers several times to the same questions.

■ The questions to which objections were sustained that are now urged as error, in substance were: How did Stamps's false answers as to his name "interfere with or hinder the proper operation" of Sayre's "duty or his investigation" as a police officer? Sayre fully and frankly testified as to all the pertinent and attendant facts. There was no testimony to the contrary. Since all the pertinent and attendant facts were before the court, the question as to whether those facts established. that Stamps by his false answers had violated the city ordinance was one of law for the determination of the trial court and called for a legal conclusion. The trial court held that they did interfere with Sayre's investigation. A majority of this court now holds that they did so interfere. With that determination the dissenting judge agrees. We hold the questions, in effect, called for a legal conclusion by Sayre, and the objections thereto were properly sustained.

Accordingly, we affirm.

SIMPSON, Circuit Judge (dissenting).

In this non-jury trial the defendant's sole defense was that the arresting officer had no probable cause to make the arrest and therefore the subsequent search was not incidental to a lawful arrest and invalid. The defendant's position is that the arrest was a sham.

In a hearing upon a motion to suppress a warrantless search under Rule 41, F.R. Crim.P., the government has the burden of proving that there was probable cause for the arrest. United States v. Jeffers, 1951, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59; Williams v. United States, 5 Cir. 1967, 382 F.2d 48; Cervantes v. United States, 9 Cir. 1959, 263 F.2d 800; 3 Wright, Federal Practice and Procedure, Federal Rules of Criminal Procedure, Sec. 675.

It was vital to the defense that Stamps should have been allowed unrestricted and searching cross-examination of Officer Sayre regardless of who called him to the stand. He was the government's, not Stamps' witness. It is difficult to imagine a witness more adverse to the interests of a defendant questioning the

---

5. See United States v. Reid, 10 Cir., 415 F.2d 294, 296; DiMarco v. Greene, 6 Cir., 385 F.2d 556, 560.

legality of a search than the very police officer who is trying to justify the arrest and search.

I cannot improve on the language of the Second Circuit when it referred to a similar but not identical trial situation in United States v. Freeman, 2 Cir. 1962, 302 F.2d 347, 351:

> "When a defendant calls government agents to the stand in an effort to establish some part of his defense he should be given every reasonable leeway in bringing out whatever may be relevant to the issues before the jury. It is pointless to require a showing, such as the trial judge indicated might be necessary, that such witnesses are hostile.

> "The agents were adverse parties within the meaning of Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C., which permits such witnesses to be cross-examined, asking leading questions, and generally impeached. Although there is no companion provision in the Federal Rules of Criminal Procedure, there is even more reason for permitting such a practice in criminal cases where every proper means of ascertaining the truth should be placed at the defendant's disposal.

> "We do not limit our repudiation of the pernicious rule against impeachment of one's witness to instances in which the witness is an 'adverse party' or 'hostile'. The search for truth is not to be confined by any such limitation, and, as Professor Morgan has aptly said:

> > 'The fact is that the general prohibition, if it ever had any basis in reason, has no place in any rational system of investigation in modern society and all attempts to modify or qualify it so as to reach sensible results serves only to demonstrate its irrationality and to increase the uncertainties of litigation'. I Morgan, Basic Problems of Evidence, page 64 (1954 Ed.)."

Further, I disagree with the majority's statement that the excluded questions called for legal conclusions. To the contrary, the questions were an entirely legitimate endeavor to determine the grounds for Officer Sayre's belief that he had probable cause to make the arrest and subsequent search. Probable cause was, of course, as shown above, the primary issue in the inquiry into the legality of the warrantless search.

With the majority's analysis of the issue as to interference with an officer's investigation, I express no quarrel, but I would reverse and remand for a new trial on the clearly demonstrated basis of the trial court's prejudicial limitation of examination of the witness Sayre.

With deference, I dissent.