**UNITED STATES of America, Appellee,**

v.

**William Clemothy NORMAN and Ernest Lester, Appellants.**

No. 74–2398.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1975.

Decided June 27, 1975.

William C. Lawton, Raleigh, N. C. (court-appointed) (Cockman, Akins & Aldridge, Raleigh, N. C., on brief), for appellant.

Christine Witcover, Asst. U. S. Atty. (Thomas P. McNamara, U. S. Atty., on brief), for appellee.

Before CRAVEN and FIELD, Circuit Judges, and CLARKE, District Judge.*

PER CURIAM.

On July 31, 1974, James Reynolds' 1970 Chevrolet Monte Carlo was stolen in Raleigh, North Carolina. An FBI agent, Jacob Culclasure, found the stolen car the next day in the parking lot of the Thunderbird Motor Inn in Lexington, South Carolina. He also observed the defendants in a motel room and the registration card for the room containing the description and license number of the automobile.

During Culclasure's investigation he also learned from the motel manager

---

* Sitting by Designation.

that defendants were apparently passing bad checks and called the sheriff's office. Deputy Sheriff Johnson responded to the call, and accompanied by Culclasure, arrested the defendants without a warrant and charged them with passing a bad check, which is a misdemeanor under the law of South Carolina.

Several days thereafter another FBI agent interviewed the defendants in jail, gave them the *Miranda* warnings, and took from them a story of involvement that would rival Jules Verne for inventiveness: that early in the morning of August 1, 1974, a blonde woman approached them and asked them to drive her car (the Chevrolet Monte Carlo) to Columbia, South Carolina, telling them that her husband's checkbook was in the glove compartment and that they were authorized to write checks on his account to finance their expenses. This absurd figment of defendants' imaginations was related to the jury by a witness for the government during their trial for transporting the stolen car, and was doubtless perceived by the jury as inculpatory.

■ On appeal defendants urge that their warrantless arrest by the South Carolina deputy sheriff was unlawful and that all of the evidence introduced at their trial was the fruit of the poisoned arrest and should have been suppressed. Their plea is not factually supported. The FBI proceeded independently with its investigation and obtained nothing as a result of the arrest except defendants' supposedly exculpatory fabrication. Even that was obtained after proper warning. Moreover, we need not even consider whether the arrest by the South Carolina deputy sheriff was unlawful, for it is clear that FBI Agent Culclasure had probable cause for arrest and would have arrested the defendants but for the deputy sheriff proceeding independently.

■■ With respect to the tale of the blonde woman, defendants contend that when the government offered the story through the FBI agent it vouched for its truth, thus requiring acquittal. We disagree. If there were ever such a rule, it was put to rest in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). It is doubtful that the common-law "voucher" rule ever went so far as to impute veracity to the narrative of a third person. Be that as it may, "[w]hatever validity the 'voucher' rule may have once enjoyed, . . ., it bears little present relationship to the realities of the criminal process." *Chambers, supra,* at 296, 93 S.Ct. at 1046. We reject such a rule altogether as archaic, irrational and potentially destructive of the truth-gathering process. C. McCormick, Evidence § 38, pp. 75–78 (2d ed. 1972); E. Morgan, Basic Problems of Evidence 70–71 (1962); 3A J. Wigmore, Evidence § 896, pp. 658–660 (J. Chadbourn ed. 1970); *see* Federal Rules of Evidence No. 607, Pub.L.No. 93–595 (Jan. 2, 1975).

Affirmed.