Benjamin MAHAVIER, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00222–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 1, 1982.

John Tafolla, San Antonio, Tex., for appellant.

Bill White, Dist. Atty., Keith F. Fahlberg, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and BASKIN, JJ.

## OPINION

BASKIN, Justice.

This is an appeal from a conviction for voluntary manslaughter. Appellant was originally indicted for murder but found guilty by a jury of voluntary manslaughter under Tex.Penal Code Ann. § 19.04 (Vernon 1974). After appellant's motion for new trial in that case was granted, he was reindicted for voluntary manslaughter and again convicted by a jury of that offense.[1] Punishment was assessed at seven years' confinement in the Texas Department of Corrections. Appellant now assigns six grounds of error for our consideration on appeal. We affirm.

By his sixth ground of error, appellant contends that the trial court erred in refusing to grant his motion for new trial because the verdict is contrary to the law and evidence. Tex.Code Crim.Pro.Ann. art. 40.03 § 9 (Vernon 1979). When the suffi-

---

1. The statute, Tex.Penal Code Ann. art. 19.04 (Vernon 1974), under which appellant was convicted provides in pertinent part,

 (a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

 (b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

 (c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

ciency of the evidence in a criminal case is challenged, the appellate court must view the evidence in the light most favorable to the verdict. *Simmons v. State,* 622 S.W.2d 111 (Tex.Cr.App.1981); *Nixon v. State,* 572 S.W.2d 699 (Tex.Cr.App.1978); *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976); *Esquivel v. State,* 506 S.W.2d 613 (Tex.Cr. App.1974). We must examine all evidence produced by both appellant and the State in making our evaluation of the insufficiency contention. *Drager v. State,* 548 S.W.2d 890 (Tex.Cr.App.1977); *Vera v. State,* 428 S.W.2d 664 (Tex.Cr.App.1968).

 If there is conflicting testimony, the jury verdict will not be disturbed provided there is sufficient testimony to support that verdict. *Rhodes v. State,* 427 S.W.2d 889 (Tex.Cr.App.1968). The jury's findings on conflicting testimony must be accepted. We must determine whether there is evidence from which they were warranted in ascertaining appellant's guilt beyond a reasonable doubt. *Floyd v. State,* 494 S.W.2d 828 (Tex.Cr.App.1973). It is not within our province to weigh or assess the credibility of the various witnesses in the instant trial and we will not indulge in such an exercise.

The record reflects that on December 17, 1978, appellant was working as a security guard at a Shoppers World store in San Antonio. Webb Eugene Boyd and his common law wife, Pam, entered the store on that day, and an argument ensued between them. Boyd began creating a disturbance in the store by shouting at Pam and using profane language. There was also testimony that Boyd grabbed Pam by the neck in a violent manner during the course of their argument. He was described as appearing drunk or under the influence of drugs.

Performing his duty as a security guard, appellant approached Boyd and cautioned him about his conduct. Boyd continued his verbal abuse and threatened appellant with physical violence. Appellant testified that he approached Boyd with handcuffs but was rebuffed by threats of death. As appellant subsequently directed the couple to a nearby exit, a brief scuffle occurred in which appellant struck Boyd on the shoulder with his nightstick, although appellant testified that he swung at Boyd but missed him. There was testimony that appellant also struck Pam while attempting to hit Boyd. The testimony is in conflict as to whether appellant told Boyd that he (Boyd) was under arrest. One witness testified that appellant referred to Boyd as a "nigger" during this altercation.

As the three moved out into the store parking lot, Boyd continued his vulgar language and at times taunted appellant, challenging him several times to fight. Boyd then climbed onto the top of a vehicle in the lot and jumped up and down, continuing his threats and profanity.

At this point, Jesus Limon, a Bexar County deputy sheriff who worked as a jail guard and who was tried as a co-defendant with appellant, approached Boyd, and the two men engaged in a fist fight. The evidence is in conflict as to whether Limon identified himself as a peace officer at this time. Boyd struggled free and struck Limon in the jaw.

While Limon and Boyd were fighting, Pam drove the car in which she and Boyd had arrived to the scene of the fight. Boyd walked around the car and got in the driver's seat, and Pam got in the back seat. Limon was standing about "one or two cars" away, and appellant was four or five feet away from the porch of the store. Boyd put the car in drive and began to move. There was testimony that someone shouted, "He's got a gun."

Limon pulled his gun, a .357 magnum revolver, pointed it upward, and as the car began to move, he pulled it downward to aim at the car. There was conflicting testimony as to whether Boyd began to drive the car slowly or whether he "burned rubber." There was also conflicting evidence that he threatened to run over appellant, and there was conflicting evidence as to whether Boyd attempted to run over appellant. There was conflicting testimony as to whether Boyd was placing other persons in the parking lot in danger.

Limon opened fire at Boyd, and there was one witness who testified Limon fired before the car began to move. Limon continued to fire, and appellant drew his .38 caliber revolver and began to fire. Limon was on the right side of the car when he began firing, and appellant was on the left side of the car near the front when he began firing. Shots were fired through the front windshield, appellant fired through the left front window as the car was passing, and one of the men fired through the rear window as the car passed.

The car swerved and stopped. Observers testified that Boyd was slumped over, and there was testimony that he had a large hole in his chest. The police were called, and, after investigation, arrested appellant and Limon. They took appellant's .38 revolver with one live round and five spent rounds in the cylinder and Limon's .357 magnum revolver with two live rounds and four spent rounds in the cylinder.

On trial, Dr. Ruben Santos, Bexar County Medical Examiner, testified that the autopsy on Boyd's body revealed a blood-alcohol level of .22 percent,[2] as well as a high amount of methamphetamine. He also testified that there was a gunshot wound in the chest, another in the left arm, and a third in his left buttock.

◼ Although there is conflicting testimony regarding the shooting death of Boyd, we find that there was sufficient evidence properly before the jury to support the conclusion of the jury that appellant was guilty of voluntary manslaughter as defined by § 19.04, *supra*. The trial court did not err in refusing to grant appellant's motion for new trial based on the allegation that the verdict was contrary to the law and evidence. Ground of error number six is overruled.

By his first ground of error, appellant maintains that the trial court erred in refusing to grant his motion to set aside the indictment because of the presence of unauthorized persons during grand jury deliber-

ations regarding the return of the indictment for voluntary manslaughter. To support his position, appellant argues that Bexar County Assistant District Attorney Charles Felder was present during the actual deliberation process and that consequently the indictment should be set aside and a new trial ordered.

◼ Article 20.03 of the Code of Criminal Procedure provides,

"The attorney representing the State" means the Attorney General, district attorney, criminal district attorney, or county attorney. The attorney representing the State is entitled to go before the grand jury and inform them of offenses liable to indictment at any time *except when they are discussing the propriety of finding an indictment or voting upon the same.* (Emphasis added.)

Tex.Code Crim.Pro.Ann. art. 20.03 (Vernon 1977). When the evidence indicates the presence of unauthorized persons during grand jury deliberation, the indictment must be set aside and a new trial ordered. *Ray v. State*, 561 S.W.2d 480 (Tex.Cr.App. 1977). The burden, however, rests upon the defendant to bring himself within the purview of the statute. *Id.* at 481; *Moody v. State*, 57 Tex.Cr. 76, 121 S.W. 1117 (1909).

◼ Two of the grand jurors and the assistant district attorney in question were called to testify at the hearing on the motion to quash the indictment. Grand juror Mungia testified emphatically that the prosecutor was not present at any time during the deliberative process. Similarly, grand juror Ponce testified that after the presentation of the evidence, Felder left the room and was not present during deliberation. Finally, Felder himself denied that he was in the grand jury room at the time the grand jurors were deliberating the issuance of the indictment for voluntary manslaughter. Appellant has failed to meet the burden of establishing a violation under article 20.03, *supra*. Accordingly, ground of error number one is overruled.

---

**2.** A person is presumed under the influence of intoxicating liquor with blood-alcohol level of .10 per cent or more by weight in the per-

son's blood. Tex.Rev.Civ.Stat.Ann. art. 6701–5, § 3(a) (Vernon 1977).

In his second ground of error, appellant contends that the trial court abused its discretion by failing to grant his motion for severance. It is appellant's contention that since co-defendant Limon fired the fatal shot, it was unfair to try appellant at the same trial with Limon. Appellant took the position that he was merely trying to stop the deceased, and he feared that the jury would not be able to distinguish between his actions and those of Limon.

■ Absent a showing of prejudice to one of the defendants in a joint trial or evidence that one defendant has a prior admissible conviction, the motion for severance is addressed to the sound discretion of the trial court. *Wilder v. State,* 583 S.W.2d 349 (Tex.Cr.App.1979), *vacated and remanded on other grounds,* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 987 (1981); *see also Dawson v. State,* 477 S.W.2d 277 (Tex.Cr.App. 1972); Tex.Code Crim.Pro.Ann. art. 36.09 (Vernon 1981).

■ Both Limon and appellant fired shots likely to cause Boyd's death. The mere fact that Limon's bullet caused Boyd's death does not establish that degree of prejudice which requires reversal based on the trial court's failure to grant appellant a separate trial.

In *Morales v. State,* 466 S.W.2d 293 (Tex. Cr.App.1971), three defendants were jointly tried for murder. Although one of the defendants testified that he actually killed the deceased and attempted to take all of the blame for that act, the Court of Criminal Appeals held that denial of a severance was not an abuse of discretion. The likelihood that the proof would show different degrees of culpability among the three was not enough to establish an abuse of discretion in denying the motion for severance. Appellant and Limon did not raise antagonistic or conflicting defenses and indeed supported one another's testimony. The fact that it was Limon's bullet which ruptured the aorta and brought about Boyd's death was not so injurious or prejudicial to appellant as to require severance. We conclude that the trial court did not abuse his discretion in denying the motion for sever-ance, and overrule ground of error number two.

Appellant's third and fourth grounds of error complain of the trial court's refusal to call Billy Williams and Pam Boyd as the court's witnesses in the instant case. Appellant argues that the trial court's inaction forced appellant to call these witnesses and vouch for their credibility, thereby precluding proper cross-examination. Appellant cites no Texas case on point to support his position.

■ Our review of the testimony of witnesses Williams and Boyd leads us to conclude that appellant's contention is groundless. At the outset of Williams' testimony, appellant made no contention of hostility, but merely called Williams to the stand. Therefore, the trial court's refusal to allow appellant subsequently to impeach Williams was proper, unless appellant could clearly demonstrate both injury and surprise. Examination of the record and appellant's bill of exception indicates that appellant failed to show any cognizable injury to justify the impeachment of Williams. Having failed to meet this burden, appellant was not entitled to impeach Williams. *See Cole v. State,* 611 S.W.2d 79 (Tex.Cr.App.1981); *Lewis v. State,* 593 S.W.2d 704 (Tex.Cr.App.1980); Tex.Code Crim.Pro.Ann. art. 38.28 (Vernon 1979).

■ When Pam Boyd was called to testify, counsel for appellant did indicate that she was a hostile witness. The record reflects numerous instances of impeachment of her testimony before the jury. We cannot perceive any harm to appellant by the court's failure to call Boyd as its own witness. When appellant's counsel called as a witness the widow of the person whom the appellant was accused of killing and whose testimony he had heard at the first trial of this cause, he assumed the risk of hostility. Finding no abuse of discretion by the trial court in refusing to call either Williams or Boyd as the court's own witnesses, we overrule grounds of error three and four.

In his fifth ground of error, appellant claims that the trial court erred in refusing

to grant his plea of former jeopardy. The record reflects that at the close of the first trial of this cause, appellant's motion for new trial was granted. Among the twelve reasons urged by appellant at that time as grounds for a new trial was the contention that the State had suppressed exculpatory evidence in its possession. The trial court did not, of course, specify upon which ground(s) of error it granted the new trial.

The factual basis for appellant's claim was that a written statement by Wanda Mumme made just after the shooting which might have aided appellant's self-defense plea was not given to appellant's counsel when all of the other statements were given to him. We do not know whether the omission was discovered in time for appellant to make use of the witness, because the record of the first trial is not before us. We may not accept as fact anything not supported in the record. *Holcomb v. State,* 523 S.W.2d 661 (Tex.Cr.App.1975); *Brown v. State,* 523 S.W.2d 238 (Tex.Cr.App.1975).

The appellant obviously learned of the statement early enough to complain in his motion for new trial. There is an affidavit in the transcript of this case by appellant and his co-defendant attaching a copy of the statement with this notation by an assistant district attorney:

> Gave this to Fred Semaan on 5–30–79. I do not know if I gave this with statements of Beatrice Rodriguez, Diane Rodriguez, Kay Burdock, Daniel Johns prior to trial or not.
>
> /s/ J. Brown

Maude Mumme

May 30, 1979

Appellant now takes the position that the first trial court granted the new trial because of prosecutorial misconduct and that his second trial was barred on the ground of former jeopardy.

The rule with regard to bar of a second prosecution of a defendant who moves for a mistrial is, and should be, narrow. The latest decision of the United States Supreme Court is *Oregon v. Kennedy,* —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) in which the Court held that a second trial is barred only if the prosecutor intended to provoke the defendant into moving for mistrial. Here there was no evidence of intentional misconduct by the prosecution. *See also Anderson v. State,* 635 S.W.2d 722 (Tex.Cr.App.1982) and *Hunnicutt v. State,* 635 S.W.2d 722 (Tex.Cr.App.1982), both decided July 14, 1982.

Even nearer to this case, the Supreme Court in *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), held that an appellate reversal of a murder and rape conviction *based on weight of evidence* did not bar retrial under the Fifth and Fourteenth Amendments.

The general principle is that the Double Jeopardy Clause of the Fifth Amendment "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside." *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). We find no intentional misconduct or overreaching prosecutorial conduct, and, in applying the general principle because appellant moved successfully for new trial, we overrule ground of error number five.

The judgment is affirmed.

CANTU, Justice, concurring.

Because of the tactical problems experienced by appellant in presenting his evidence in its most favorable posture, I feel compelled to express my separate views regarding the so called "voucher rule". Given the opportunity to do so, I would encourage the demise of the rule, thus bringing Texas in step with the world of reality.

Requiring that appellant demonstrate hostility or a cognizable injury in order to impeach the deceased's wife, a clearly hostile witness *ab initio,* rubs against the grain of the truth gathering process and serves to perpetuate irrationality.

A reading of *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) would seem to lead to the conclusion that a "voucher rule" has no place in a

criminal proceeding, whatever the jurisdiction. Surely the argument cannot be made that the Texas rule is significantly different from that of Mississippi.

It is time that Texas abandon trial by compurgation, the Justinian Code and such other archaic concepts still clinging on unnecessarily and hampering the truth-seeking processes.

For too long now Texas Rule of Civil Procedure 182[1] has existed without a criminal counterpart. The same argument can be made in the instant case as was made in *U.S. v. Bryant,* 461 F.2d 912 (6th Cir.1972) when the court, recognizing Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C. and the lack of a criminal counterpart,[2] stated:

... [T]here is even more reason for permitting such a practice in criminal cases where every proper means of ascertaining the truth should be placed at the defendant's disposal.

The voucher rule has been universally criticized as having "no place in a rational system of investigation in modern society ... all attempts to modify or qualify it so as to reach sensible results serves only to demonstrate its irrationality and to increase the uncertainties of litigation." 1 Morgan, Basic Problems of Evidence, p. 64 (1954 Ed.); *See also* 3 Wigmore on Evidence, §§ 896–899 (3rd Ed. 1940); Ladd, *Impeachment of One's Own Witness-New Developments,* 4 U.Chi.L.Rev. 69 (1936); *U.S. v. Norman,* 518 F.2d 1176 (4th Cir.1975); *U.S. v. Lineberger,* 444 F.2d 122 (4th Cir.1971), *cert. denied* 404 U.S. 1060, 92 S.Ct. 746, 30 L.Ed.2d 748 (1972); *U.S. v. Stamps,* 430 F.2d 33 (dissenting opinion of Circuit Judge Simpson) (5th Cir.1970); *U.S. v. Fancher,* 319 F.2d 604 (2d Cir.1963); Saltzburg, *The Unnecessarily Expanding Role of the American Trial Judge,* 64 Va.L.Rev. 1, 67 (1978); 3 J. Weinstein & M. Berger, Weinstein's Evidence, 607[01].

I agree with the majority opinion that appellant was, in practical effect, permitted to proceed with a relaxed application of the voucher rule, yet I can find no justification for the application of the rule to any degree, be it relaxed, modified or otherwise.

I urge the legislature to consider the beneficial effects of a rule comparable to Rule 607, Federal Rules of Evidence.

1. Source: Acts 1929, 41st Leg. 1st C.S. p. 255, ch. 105, § 1.

In the trial of any civil suit or proceeding in any justice court, county court, or district court any party plaintiff or defendant shall have the right to call as a witness in his behalf any other individual who is a party to such suit or proceedings, either as plaintiff or defendant ... any such witness may be examined by the party calling the witness, and if such witness give testimony adverse to the party calling him, the party so calling such adverse witness shall not be bound to accept the testimony of such adverse witness as true, but shall have the right to impeach such witness and the testimony of such witness, and shall have the right to introduce other evidence upon any issue involved in such suit or proceeding without regard to the testimony of such adverse witness, and in examining such adverse witness leading questions may be asked by counsel for the party calling such witness but opposing counsel shall not be permitted to ask such witness leading questions or in any manner lead such witness.

2. Rule 607, Federal Rules of Evidence, Pub.L. 93–595, § 1, Jan. 2, 1975, 88 Stat.1934, "The credibility of a witness may be attacked by any party, including the party calling him."