Robert Duane STILLS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–86–230–CR.

Court of Appeals of Texas,
Eastland.

March 26, 1987.

Ed Paynter, Law Offices of Ed Paynter, P.C., Abilene, for appellant.

Jorge A. Solis, Crim. Dist. Atty., Abilene, for appellee.

ARNOT, Justice.

Robert Duane Stills was convicted of failing to stop and render aid at the scene of an automobile accident.[1] The jury assessed Stills a six month probated sentence. We affirm.

A collision occurred between an automobile and a motorcycle at an intersection in Abilene. Stills was driving the automobile. The injured party, Joe Michael Riley, was operating the motorcycle. According to William L. Brittain, an eyewitness produced by the State, Stills' automobile entered the intersection, collided with Riley's motorcycle, and continued down the road without stopping. The evidence is controverted as to whether the traffic light was green or red when Stills' car entered the intersection. In any event, Riley sustained injuries requiring hospitalization. The collision damaged the front passenger side of Stills' automobile.

As part of its case in chief, the State introduced the testimony of Carolyn Ann Lander, a passenger in the automobile driven by Stills. On *direct examination* Lander testified that she felt "something hit the car" and then the glass of the passenger window shattered. Stills continued driving through the intersection and eventually pulled over to the side of the road. Lander testified that she "panicked" and told Stills, "I don't see a car, Bobby. I think someone shot at the window." According to her direct testimony, Lander did not think that there had been an accident involving another vehicle.

The next morning Lander heard news reports that an automobile similar to the one driven by Stills had been involved in a "hit and run" accident with a motorcycle. Lander immediately telephoned Stills and informed him of what she had heard. Stills went to the Abilene Police Station and gave the following statement which was introduced into evidence by the State:

On Monday evening, October 29, 1984, at 8:PM, I went to the Civic Center to a Rehab Benefit. At about 10:15 PM, I left the Civic Center and was on my way home. I was driving on South 1st, driving in the direction of the Kiva Inn. I stopped my car in the inside lane in which I had been driving at Sayles Blvd for a red light. The red light changed to green, and I started to go. At this time I felt the bump on the car and heard the glass break. I did not stop, but continued going. I pulled over into the turn lane, but did not stop, but pulled over to where I could look back over my shoulder, looking for a car that had hit me. I did not see any car, so I drove off. I got scared and continued on after not seeing anything. I then drove on home.

Tuesday morning at about 11:45 AM, my mother called me and told me what had happened. So, I told her to come get me and bring me to the Police Station. The car I was driving belongs to my mother. It is a Lincoln Continental, champagne gold in color.

---

1. TEX.REV.CIV.STAT.ANN. art. 6701d, secs. 38, 40 (Vernon 1977 & Supp. 1987).

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Stills urges three points of error. In Point of Error No. 1, he argues that the evidence is insufficient to sustain his conviction because the evidence did not show that Stills had knowledge that an accident had occurred or that Stills knowingly struck Riley as alleged in the indictment.

■ In deciding a sufficiency of evidence point, the proper standard of review is whether, after viewing *all* the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Cr.App.1986); *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Cr. App.1986); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Cr.App.1984). Applying this standard, we hold that the evidence is sufficient to sustain Stills' conviction. A rational trier of fact could have concluded from the State's eyewitness testimony and evidence showing damage to the automobile, that Stills struck Riley and then knowingly continued to drive down the road without stopping to render aid. Stills' first point of error is overruled.

In his second point of error, Stills contends that the trial court erred in failing to charge the jury regarding certain statements alleged to be exculpatory which were introduced by the State during its case in chief. Stills claims that his statement made to police the day after the accident directly refuted the allegation that Stills "knowingly" failed to stop and render aid at the scene of the accident.

In *Palafox v. State*, 608 S.W.2d 177, 181–82 (Tex.Cr.App.1979, en banc), cited by Stills, the Court of Criminal Appeals set forth the rule regarding exculpatory statements in a written confession introduced by the State:

It is well stated that "[w]here the state puts in evidence the statements of the accused party which exculpates the accused, and does not directly or indirectly disprove them, the accused is entitled to an acquittal." *Banks v. State*, 56 Tex. Cr.R. 262, 265, 119 S.W. 847, 848 (1909). The rule was stated in somewhat different language in *Huffman v. State*, 97 Tex.Cr.R. 436, 438, 262 S.W. 76, 77 (1924): "[w]hen the State has placed in evidence a confession or statement of the accused which is exculpatory, the state is bound thereby unless the other testimony demonstrates the falsity of such statement." Of course, it is necessary that the confession or statement amount to an admission plus an assertion that would exculpate the accused from the crime charged. *Davis v. State*, 474 S.W.2d 466 (Tex.Cr.App.1971); *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1971); *Simon v. State*, 488 S.W.2d 439 (Tex.Cr. App.1972).

To invoke the rule, therefore, it must first be established that the accused has admitted doing the acts which would ordinarily constitute the gravamen of the offense. Then, this Court must determine whether the statements alleged to be exculpatory are such as would clear or tend to clear the accused from fault or guilt. *Davis v. State*, supra at 467–468; *Brown v. State*, supra at 955; *Richards v. State*, supra (note 3) [511 S.W.2d 5] at 6–7 [Tex.Cr.App.1974]. Finally, it must appear that the State has not refuted the exculpatory statement....

See also *Dunn v. State*, supra at 331; *Daniel v. State*, 668 S.W.2d 390, 392–93 (Tex.Cr.App.1984); *Coleman v. State*, 643 S.W.2d 947, 951 (Tex.Cr.App.1982, en banc).

■ Where the defendant does not testify in the case and the State introduces a defendant's confession which contains an exculpatory statement, the jury must be charged, upon proper objection, that the defendant is entitled to a verdict of not guilty unless such exculpatory statements have been disproven or shown to be false by other evidence in the case. *Dunn v. State*, supra at 331–32; *Otts v. State*, 135

Tex.Cr.R. 28, 116 S.W.2d 1084, 1088 (1938). Where the statements exculpate as to an element of the offense, such statements must be disproved beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Palafox v. State,* supra at 182.

Our first inquiry, as noted above in *Palafox,* is to determine whether Stills admitted in his statement "doing the acts which would ordinarily constitute the gravamen of the offense." The essential elements of the offense of failure to stop and render aid at the scene of an accident are:

1. a driver of a vehicle
2. involved in an accident
3. resulting in injury or death of any person
4. intentionally and knowingly
5. fails to stop and render reasonable assistance.

*Steen v. State,* 640 S.W.2d 912, 915 (Tex. Cr.App.1982, en banc); TEX.REV.CIV. STAT.ANN. art. 6701d, secs. 38, 40 (Vernon 1977 & Supp.1987). See also *Goss v. State,* 582 S.W.2d 782, 785 (Tex.Cr.App. 1979).

■ We cannot conclude, from our examination of Stills' statement, that Stills admitted the elements of the offense of failing to stop and render aid at the scene of an accident. In fact, Stills specifically asserted in his statement, "I did not see any car, so I drove off. I got scared and continued on after not seeing anything." This statement, if true, amounts to an assertion that Stills did not know that he had been involved in an accident with another vehicle. Such statement would serve to negate the "intentional and knowingly" element of the offense. *Steen v. State,* supra at 915. We hold that Stills did not admit "doing the acts which would ordinarily constitute the gravamen of the offense." *Palafox v. State,* supra at 181. Therefore, the State was not bound by any exculpatory assertions contained within Stills' statement to police; and there was no need for the jury to be charged regarding the exculpatory effect of such statements.[2] Stills' second point of error is overruled.

In his third point of error, Stills argues that the trial court erred in failing to charge the jury regarding the allegedly exculpatory testimony of witness Lander presented by the State as part of its case in chief. Stills contends that the testimony of Lander directly contradicts the allegation that Stills was "knowingly" involved in an accident. In *Gragg v. State,* 152 Tex.Cr.R. 386, 214 S.W.2d 292, 294 (1948), the Court

**2.** The adoption of the new Texas Rules of Criminal Evidence, effective September 1, 1986, casts serious doubts on the validity of the rationale underlying the *Palafox* rule. TEX.R.CRIM. EVID. 607 provides: "The credibility of a witness may be attacked by any party, including the party calling him." Since, as we have held, in our discussion under Point of Error No. 3, a party no longer vouches for the credibility of his witness, there may no longer be any rationale for the rule that the State is bound by exculpatory statements contained within a defendant's confession. The Court of Criminal Appeals has, in fact, foreshadowed the demise of the voucher rule:

> The dissent is precisely correct in its observation that the voucher rule has been widely condemned as archaic, irrational, and destructive of the truth-gathering process. It is also correct in its assessment of the *future* effect of the new rules of criminal evidence as promulgated by this Court, *effective September 1, 1986.* In the instant case, the appellant is entitled to rely on *existing* law, however, as we are mindful that "In practice, such trifles as contradictions in principle are easily set

> aside; the faculty of ignoring them makes the practical man." Henry Adams, *The Education of Henry Adams,* (1907), 3. (Emphasis in original)

*Ibanez v. State,* (No. 69,330, at 4 n. 3, Tex. Cr.App., June 11, 1986) (not yet reported). See also *United States v. Riggs,* 537 F.2d 1219, 1221 (4th Cir.1976); *Ibanez v. State,* supra (Davis, J., dissenting); *Palafox v. State,* supra at 177, 183–84 (Dally, J., dissenting); *Mahavier v. State,* 644 S.W.2d 129, 134–35 (Tex.App.—San Antonio 1982, no pet'n) (Cantu, J., concurring).

In his dissent filed in the *Ibanez* case, Judge Davis stated:

> We note further that this "voucher rule" set forth in *Palafox v. State,* 608 S.W.2d 177 (Tex. Cr.App.1980), "widely condemned as archaic, irrational, and destructive of the truth-gathering process", seems to be abolished by the soon-to-be-effective Texas Rules of Criminal Evidence. See rule 607. The rationale behind the voucher rule is effectively destroyed by Rule 607. *See also Palafox,* supra, at 183–184, Dally, J., dissenting.

of Criminal Appeals considered the effect of such testimony introduced by the State:

> Appellant has presented with much insistence that the State had introduced some five or six witnesses who testified to statements made by appellant soon after the drowning which, if true, would show that the death of his wife was accidental and no fault of his. *Having introduced this evidence the State is bound by the exculpatory statements contained therein unless it succeeds in proving the falsity of them.* This it may do by direct testimony or it may be shown to the satisfaction of the jury by all of the facts and circumstances of the case. The question then may be discussed under the proposition that the evidence was insufficient to show the corpus delicti. If it is sufficient then the exculpatory statements may be thereby contradicted. If not, the State's case must fall on both propositions. (Emphasis added)

See also *Weathered v. State*, 128 Tex.Cr.R. 263, 81 S.W.2d 91, 93 (1935).

The premise that the State is bound by exculpatory testimony which it introduces rests upon the common law "voucher rule." See *Ibanez v. State* (Tex.Cr.App.1986) (not yet reported). This rule provides that a party may not impeach his own witness; rather, a party who calls a witness to the stand "vouches for his credibility." *Chambers v. Mississippi*, 410 U.S. 284, 296, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973); *Lipinski v. New York*, 557 F.2d 289, 292–94 (2d Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *Palafox v. State*, supra at 183–84 (Dally, J. dissenting); C. McCORMICK & E. CLEARY, Mc-CORMICK ON EVIDENCE sec. 38, (3d ed. 1984).

The historical origins of the "voucher rule" are uncertain. The Supreme Court of the United States has suggested that the rule is a remnant of the ancient civil trial procedure of compurgation by oath. *Chambers v. Mississippi*, supra at 410 U.S. 296, 93 S.Ct. 1046, 35 L.Ed.2d 309. In *Lipinski v. People of State of New York*, supra at 293 n. 6, Chief Judge Irving R.

Kaufman reviewed the history of compurgation by oath:

> In the early medieval period, proof was not an attempt to convince the judges; it was an appeal to the supernatural, and very commonly a unilateral act. The common modes of proof are oaths and ordeals. It is adjudged, for example, in an action for debt that the defendant do prove his assertion that he owes nothing by his own oath and the oaths of a certain number of compurgators, or oath-helpers. The defendant must then solemnly swear that he owes nothing, and his oath-helpers must swear that his oath is clean and unperjured. If they safely get through this ceremony, punctually repeating the right formula, there is an end of the case; the plaintiff, if he is hardy enough to go on, can only do so by bringing a new charge, a criminal charge of perjury against them. They have not come there to convince the court, they have not come there to be examined and cross-examined like modern witnesses, they have come there to bring upon themselves the wrath of God if what they say be not true.

F. Maitland, The Forms of Action at Common Law 15 (1962). A party's oath-helpers were ordinarily his relatives and did in fact stand as guarantors, if not of his veracity, at least of the justice of his position. See 1 M. Bloch, Feudal Society 124–25 (1961). If the poet of The Song of Roland may be credited, a party's guarantors risked even more than their souls: the thirty kinsmen who vouched for Ganelon, Roland's betrayer, were promptly hanged after his champion was slain in a judicial duel. See the Song of Roland (J. Bedier ed.). "The Trial of Ganelon."

Compurgation by oath was viewed as unsatisfactory even in the time of the Year Books. With the centralization of justice in the royal courts, oath-helpers no longer faced the discipline of having to live with their opponents—and the parish priest—in a small community. They were increasingly hired off the streets, and eventually from the ranks of court

ushers. See S.F.C. Milsom, Historical Foundations of the Common Law 51 (1969). It is somewhat bewildering to consider today a rule [the voucher rule] whose historical predecessor seems to have been discredited for almost 600 years.

Whatever its origins, the voucher rule has been condemned as archaic, irrational, and potentially destructive of the truth gathering process. *Chambers v. Mississippi*, supra at 410 U.S. 296 n. 8, 93 S.Ct. 1046 n. 8, 35 L.Ed.2d 309 n. 8; *Ibanez v. State*, No. 69,330 supra at 4; *Mahavier v. State*, 644 S.W.2d 129, 134–35 (Tex.App.—San Antonio 1982, no pet'n) (Cantu, J., concurring). See also *United States v. Norman*, 518 F.2d 1176, 1177 (4th Cir.1975). In many instances a party has little or no choice of witnesses, but rather, must call those who happened to have observed the particular facts in controversy. *United States v. Bileck*, 776 F.2d 195, 197–98 (7th Cir.1985); *United States v. McKeon*, 738 F.2d 26, 33 n. 5 (2d Cir.1984).

The "voucher" rule was rejected with the enactment of Rule 607 of the Federal Rules of Evidence. FED.R.EVID. 607 states that "The credibility of a witness may be attacked by any party, *including the party calling him.*" (Emphasis added) The Advisory Committee's note to Federal Rule 607 explains that:

> The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary.

On September 1, 1986, the new Texas Rules of Criminal Evidence became effective.[3] TEX.R.CRIM.EVID. 607 is identical to FED.R.EVID. 607, which was enacted on January 2, 1975. We will, therefore, look to federal case law for guidance in interpreting the effect of newly adopted TEX.R. CRIM.EVID. 607 on exculpatory testimony introduced by the State.

The Seventh Circuit in *United States v. Bileck,* supra at 197–98, rejected the argument that the government vouched for the credibility of its witnesses:

> Defendant's argument that the court erred in allowing the government to impeach the credibility of its own witnesses concerning their felony convictions must also fail. It was entirely proper for the government to make these inquiries of its witnesses. The government's questioning of its own witnesses concerning prior felony convictions is admissible to enable the jury to weigh the credibility of the witnesses. The determination of a witness' credibility and evaluation of all the factors that go into it is entirely up to the jury.

Rule 607 of the Federal Rules of Evidence provides that: "The credibility of a witness may be attacked by any party including the party calling him." The Advisory Committee Notes on Rule 607 point out that the "traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witness as worthy of belief, since he rarely has a choice in selecting them." *In other words, the government had no choice in whom the defendant chose as his compatriots, and should not be required to vouch for their credibility.* (Emphasis added)

Similarly, in *United States v. Torres,* 719 F.2d 549, 557 n. 5 (2d Cir.1983), the Second Circuit concluded that the voucher rule was no longer viable in light of FED.R.EVID. 607:

> The situation was compounded further by the court's misapprehension of a rule of evidence. The court thought that if Spottke and Dugan were called as defense witnesses, the defense would be bound by their answers. The court inquired, mistakenly: "What can they properly testify to as defense witnesses? Clearly the government is not going to call them.... Are you not bound by their answers at that point." The old rule against impeaching one's own wit-

---

3. Trial began in the instant case on October 6, 1986.

ness has been abandoned by the federal rules: "The credibility of a witness may be attacked by any party, including the party calling him." Fed.R.Evid. 607.

In *United States v. Norman,* supra at 1177, the Fourth Circuit concluded that the government did not "vouch" for the credibility of a third person narrative:

> With respect to the tale of the blonde woman, defendants contend that when the government offered the story through the FBI agent it vouched for its truth, thus requiring acquittal. We disagree. If there were ever such a rule, it was put to rest in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). *It is doubtful that the common-law "voucher" rule ever went so far as to imput veracity to the narrative of a third person. Be that as it may,* "[w]hatever validity the 'voucher' rule may have once enjoyed ... it bears little present relationship to the realities of the criminal process." *Chambers,* supra, at 296, 93 S.Ct. at 1046. We reject such a rule altogether as archaic, irrational and potentially destructive of the truth-gathering process. C. McCormick, Evidence sec. 38, pp 75–78 (2d ed. 1972); E. Morgan, Basic Problems of Evidence 70–71 (1962); 3A J. Wigmore, Evidence sec. 896, pp. 658–660 (J. Chadbourn ed. 1970); see Federal Rules of Evidence No. 607, Pub.L.No. 93–595

In *United States v. Black,* 525 F.2d 668, 669 (6th Cir.1975), the Sixth Circuit held that the government was not bound by the testimony of its witness:

> The evidence supporting the government's theory of the case was that the rifle was found in defendant's truck, that the defendant had ammunition for the gun and a rack in which it could have been kept, and the testimony of the rebuttal witness that he had seen the defendant with the rifle in his possession several times prior to his arrest. *In this situation, the government was not bound by the testimony of the witness who testified, when called by the government, that the rifle belonged to him and not to the defendant. United*

*States v. Polizzi,* 500 F.2d 856, 905 (9th Cir.1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Davis,* 437 F.2d 928 (7th Cir. 1971); *United States v. Brady,* 425 F.2d 309 (8th Cir.1970). It was the proper function of the jury, in light of the whole record, to determine the credibility of the former employee's testimony that the gun was his. (Emphasis added)

See also *United States v. Smith,* 523 F.2d 771, 776 (5th Cir.1975), *cert. denied* 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976).

We agree with these decisions that FED.R.EVID. 607 abrogated the common-law voucher rule. Since TEX.R.CRIM. EVID. 607 is identical to FED.R.EVID. 607, we follow the reasoning of the federal cases discussed above, and we hold that the State is no longer bound by exculpatory testimony elicited from its witness on direct examination. Exculpatory testimony should be weighed and considered by the trier of fact in light of the whole record and in the same manner as any other evidence in the case. Therefore, there is no reason for requiring the jury to be charged on the effect of exculpatory testimony. Stills' third point of error is overruled.

The judgment of the trial court is affirmed.