Armando ELIZANDO, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–065–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 17, 1983.

John H. Flinn, Sinton, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a jury conviction for the offense of murder. Appellant, Armando Elizando (Elizando), a juvenile of the age of 16 years, was charged with the offense of murder in juvenile proceedings. The 36th Judicial District Court of San Patricio County, Texas, sitting as a Juvenile Court, waived jurisdiction of the Juvenile Court and transferred the cause to "the Criminal District Court of San Patricio County, Texas, for criminal proceedings...." An examining trial was held, and Elizando was bound over to the grand jury. Appellant was indicted for the offense of murder. A motion to quash the indictment was overruled.

Upon a trial by jury and over a plea of not guilty, Elizando was convicted of the offense of murder, and punishment was assessed by the jury at 15 years' imprisonment in the Texas Department of Correc-

tions. Appeal was properly perfected to this Court.

Appellant brings forth four grounds of error. He does not attack the sufficiency of the evidence to support the conviction.

The State's evidence reflects that on the night of December 22, 1978, the deceased, Casimiro Lamas, and two other individuals were sitting in a vehicle parked in the parking lot of a drive-in type grocery store. The deceased was sitting on the passenger's side of the front seat of the vehicle, with the door ajar, when he was approached by Elizando. Some words were exchanged in Spanish, then Elizando fired at the deceased with a handgun. The deceased suffered a wound to the chest as a result of the shooting. This wound caused the deceased's death.

■ In his first ground of error, appellant alleges that the juvenile court committed fundamental error in transferring the proceedings, as it transferred the proceedings to the "Criminal District Court" and not expressly to the 36th District Court. Section 54.02(a), V.T.C.A., Family Code, provides:

"(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if . . ."

Appellant does not contend that the juvenile court improperly waived jurisdiction over the cause, but rather that the district court never properly obtained jurisdiction as it was never expressly identified. We disagree. See *James v. State,* 554 S.W.2d 680 (Tex.Cr.App.1977).

In his second ground of error, appellant contends that the indictment in this cause was defective, as the grand jury that returned it was substantially underrepresented by persons of Mexican descent. He asserts that its makeup was the result of intentional racial discrimination.

■ To establish a prima facie case of an equal protection violation under *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the defendant must first show that the procedure employed in composing a grand jury resulted in a substantial underrepresentation of his race or of an identifiable group to which he belongs. Second, he must prove this underrepresentation by comparing the suspect group in total population to the proportion of the group called to serve as grand jurors, *over a significant period of time.*

■ Defense counsel made no statistical showing to the trial court that there has been any underrepresentation of persons of Mexican descent in the makeup of prior grand juries. He did, however, request that grand jury lists, for the years 1974–1978, both inclusive, be made part of the record. Those lists were introduced into evidence. They show that for the five-year period involved, the percentage of grand jurors with Mexican surnames on the panel averages out to about 34.6%, and the percentage of grand jurors with Mexican surnames who actually served on the several grand juries averages out to about 39.0%.

The number of persons with Mexican surnames who were on the grand jury panel and those who actually served as grand jurors, as shown by the aforesaid lists, are:

| TERM AND YEAR | NO. OF PERSONS ON GRAND JURY PANEL/ NO. OF PERSONS ON GRAND JURY | NO. OF MEXICAN–AMERICAN SURNAMES ON GRAND JURY PANEL/ NO. ON GRAND JURY | PERCENTAGE OF MEXICAN AMERICAN SURNAMES ON GRAND JURY PANEL/ PERCENTAGE ON GRAND JURY |
|---|---|---|---|
| Feb. 1974 | 20/12 | 11/6 | 55%/50% |
| Sept. 1974 | 20/12 | 4/3 | 20%/25% |
| Feb. 1975 | 17/12 | 7/6 | 41%/50% |
| Sept. 1975 | 20/12 | 5/5 | 25%/41% |
| Feb. 1976 | 20/12 | 7/4 | 35%/33% |
| Sept. 1976 | 20/12 | 5/4 | 25%/33% |

| TERM AND YEAR | NO. OF PERSONS ON GRAND JURY PANEL/ NO. OF PERSONS ON GRAND JURY | NO. OF MEXICAN– AMERICAN SURNAMES ON GRAND JURY PANEL/ NO. ON GRAND JURY | PERCENTAGE OF MEXICAN AMERICAN SURNAMES ON GRAND JURY PANEL/ PERCENTAGE ON GRAND JURY |
|---|---|---|---|
| Feb. 1977 | 22/12 | 8/6 | 36%/50% |
| Sept. 1977 | 20/12 | 9/6 | 45%/50% |
| Feb. 1978 | 15/12 | 5/3 | 33%/25% |
| Sept. 1978 | 19/12 | 6/4 | 31%/33% |

Conflicting evidence was presented the trial court on the ethnic makeup of the population of San Patricio County for the period 1974–1978. According to the 1970 Federal Census, approximately 49% of the persons in the county were of Mexican descent. Evidence was also presented to the effect that according to the 1978 voter registration records in San Patricio County, about 41% of the population was of Mexican descent. Neither of these statistics will provide an accurate percentage of persons of Mexican descent who are qualified to serve as grand jurors, but since the statistics based upon the voter registration are more recent with regard to the time period questioned, we believe it has a greater degree of reliability.

We believe that the figures presented the trial court clearly show no underrepresentation over a significant period of time. Appellant has failed to make out a prima facie case.

■ Appellant, in his third ground of error, complains that the trial court committed error by excluding from evidence photographs, offered by the defense, showing injuries sustained by a third party but allegedly inflicted by the deceased in the presence of Elizando. It would appear from the evidence that these photographs were of an injury sustained at a time approximately two years prior to Elizando's shooting of the deceased. The trial judge ruled these photographs irrelevant or immaterial to the case at bar.

"The evidentiary rules require that photographs be legally relevant to the solution of a disputed fact issue. A determination of the legal relevance of a photograph is made upon the same basis as is a decision on the admissibility of other types of evidence, and this determination must necessarily rest largely in the discretion of the trial judge." *Lanham v. State,* 474 S.W.2d 197 (Tex.Cr.App.1972).

We find that the trial court did not abuse its discretion in excluding the offered photographs.

■ In his fourth and final ground of error, appellant contends that the prosecutor made improper remarks at the punishment stage of the trial which were harmful to appellant's request for a probated sentence.

In the closing argument of the prosecution, at the punishment stage, the following statements, objections and court rulings were made:

"Mr. Seidler: ... What punishment is that for a man who has committed first degree murder? Probation—

Mr. Flynn: Your Honor, that is clearly improper. He hasn't committed first degree murder. First degree murder is capital murder and this is not a capital case and it never was.

The Court: Overrule the objection. It is first degree murder."

We can find no other place in the record where a penalty was equated with a particular numerical degree of murder. The court's initial charge explained differences between murder and voluntary manslaughter. The charge given at the punishment stage dealt only with murder. It advises the jury that the range of penalties it could assess was "LIFE OR FOR ANY TERM OF NOT MORE 99 YEARS OR LESS THAN 5 YEARS." The charge further advised the jury that should it decide on a punishment not in excess of ten (10) years imprisonment and if it also found that the defendant had

never before been convicted of a felony, then it could recommend probation.

The jury returned an assessment of "a period of 15 years."

The punishment assessed by the jury is within the range prescribed for a conviction of murder. Error, if any, as a result of the comments made concerning "first degree murder" is harmless.

We have reviewed all of appellant's grounds of error and overrule the same. The judgment of the trial court is AFFIRMED.