Servando GUERRA, Jr., a/k/a
Sandy, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-86-526-CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1988.

Rehearing Denied Nov. 10, 1988.

Juan Martinez Gonzales, Beeville, for appellant.

James A. Hensarling, Dist. Atty., Edna, Jim Vollers, Austin, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

A jury found appellant guilty of engaging in organized criminal activity and assessed his punishment at 99 years in the Texas Department of Corrections. Appellant raises numerous issues in 37 points of error. We vacate the judgment and remand the cause to the trial court because of error which occurred in the punishment phase of trial.

In his first point of error, appellant asserts that an order extending the grand jury which indicted appellant is void because the order failed to give a specific enough reason for the extension. Appellant was indicted by the July–January 1985–86, Jackson County Grand Jury. On December 10, 1985, the trial court extended, for a period not to exceed 90 days, the expiration date for the original term for which it was empaneled. The order extending the expiration date stated that the foreman of the Grand Jury declared to the Court that the investigation by the Grand Jury of matters before it could not be concluded before the expiration of its term, and that the term would be extended for the purpose of concluding the investigation of matters before it. The Grand Jury indicted appellant on March 31, 1986.

Appellant contends that the order is void since it did not specify the matters being investigated. The specificity suggested by appellant would appear to conflict with the requirement of, and frustrate the purpose of, the secrecy of grand jury proceedings. The order specifically recites the statutory reason for extending the term of the grand jury set out in Tex.Code Crim.Proc.Ann. art. 19.07 (Vernon 1977). Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in overruling his motion to quash the indictment since Jackson County has a history of under-representing Mexican–Americans on grand juries. The parties stipulated that hispanics comprised 18.7% of Jackson County's population. One hispanic served on the grand jury which indicted appellant.

The appellant has satisfied the hurdles required to challenge the make-up of the grand jury based on his claim of a historical discrimination. *See Bird v. State*, 692 S.W.2d 65 (Tex.Crim.App.1985). Although appellant did not pursue this issue in great detail at trial, some evidence showing the make-up of Jackson County grand juries was presented by way of stipulation of the parties. An exhibit containing the listing of names of the grand jurors that were called and those that served on the juries in Jackson County over a ten-year period was also presented by way of stipulation.

The evidence shows that over the past 10 years, 16% of those persons serving on Jackson County grand juries were hispanic (33 of 252 grand jurors). Likewise, of those initially called for grand jury service, 16% were hispanic. (71 of 440). The parties stipulated that 18.7% of Jackson County is hispanic. We do not find this disparity to be significant enough to show a prima facie case of ethnic discrimination. *See Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Elizando v. State*, 649 S.W.2d 674 (Tex.App.—Corpus Christi 1983, no pet.); *Cerda v. State*, 644 S.W.2d 875 (Tex.App.—Amarillo 1982, no pet.). Appellant's second point of error is overruled.

In points of error three through twelve, appellant challenges the admissibility of evidence obtained through a wiretap of telephones in his residence and business. While each point alleges different defects in the wiretap procedure, we will address the points together.

Appellant alleges that the investigating officer's affidavit was defective in failing to set forth sufficient facts to allow the trial court which issued the wiretap authorization to find probable cause that appellant was committing a felony, a prerequisite to the issuance of a wiretap under former Tex.Code Crim.Proc.Ann. art. 18.20, § 4. Acts 1981, 67th Leg., p. 729, ch. 275 § 1, amended by Acts 1983, 68th Leg., p. 4880, ch. 864 § 4. The current provision, Tex.Code Crim.Proc.Ann. art. 18.20 (Vernon Supp.1988) is substantially the same as the 1983 version.

Section 4 provides:

A judge may issue an order authorizing interception of wire or oral communications only if the prosecutor applying for the order shows probable cause to believe that the interception will provide evidence of the commission of a felony (other than felony possession of marihuana) under the Texas Controlled Substances Act (Article 4476–15, Vernon's Texas Civil Statutes) or of a felony under the Texas Dangerous Drug Act (Articles 4476–14, Vernon's Texas Civil Statutes).

We must determine whether the affidavit supporting the request for the wiretap contained the probable cause requirements prescribed by art. 18.20, § 4. The present case appears to be the first Texas case dealing with probable cause in the issuance of a wiretap authorization.

The affiant, Officer Ruben Molina of the Texas Department of Public Safety, averred that he believed appellant was involved in a conspiracy to distribute cocaine, hashish, heroin, and marihuana. He believed that appellant was using the telephone extensively to arrange his deals.

Many of the facts and circumstances detailed in Molina's affidavit concern persons who were associates of appellant. Some of the events relied upon occurred years before this affidavit was signed on October 15, 1984. Some of his information was obtained through the records of other law enforcement agencies and through other criminal investigations. The affidavit is 67 pages long. Therefore, we will summarize the portions relevant to the issue of sufficient probable cause.

The affiant set forth numerous allegations to support the wiretap request. We have summarized the allegations as follows: [1]

(1) In 1980, Jose Ricardo Ruiz was arrested for delivery of cocaine. Ruiz served 18 months in federal prison. Upon his

---

1. Page 26 of the affidavit was not included in the appellate copy of the pre-trial exhibits. We have, however, found page 26 elsewhere in the appellate record as part of another exhibit.

release he became an associate of appellant.

(2) In 1980, a Travis County officer received information from a reliable and credible informant that appellant was apparently conducting a narcotics transaction at the Austin airport.

(3) In 1981, a credible and reliable source informed a Drug Enforcement Agent that appellant could supply large quantities of cocaine.

(4) In January 1984, appellant and Billy Frank Webb were arrested for "hunting from a vehicle on a public road" near an area where an aircraft started and took off.

(5) In September 1983, a DPS investigator was informed by a credible and reliable source that Billy Frank Webb was engaged in the distribution of large quantities of cocaine and marihuana.

(6) Surveillance showed that whenever appellant or his associates used a telephone at an H.E.B. grocery store, they would always use the same phone. Telephone records showed that the other pay phone had no long distance calls, while the phone appellant and his associates used had calls to Florida, Illinois, Austin, and other areas.

(7) In February 1984, Noe Benavides Garza used the pay phone at the H.E.B. Shortly before that, Garza's car had been parked at appellant's residence. Telephone records showed that Garza possibly called Faustino Rios in Illinois. Rios had several arrests for marihuana violations.

(8) Noe Benavides Garza was arrested in February 1984, for possessing 50 pounds of marihuana. Shortly after his arrest, Garza twice telephoned appellant from the Live Oak County Jail.

(9) In May 1984, Sheriff Castellano observed appellant get into the passenger's side of a vehicle with R.C. Allen Company decals on the doors.

(10) In May 1984, a Brooks County Deputy Sheriff observed appellant get into a truck on U.S. 281 sometime after midnight.

(11) In May 1984, a reliable and credible informant told the Brooks County Sheriff that appellant was using vehicles from oilfield servicing and equipment companies, such as R.C. Allen, to transport marihuana, cocaine, heroin, and hashish past the Falfurrias border patrol check point.

(12) At some time unstated in the affidavit, a reliable and credible source of information told Sheriff Castellano that appellant had made numerous calls and personal visits to Lorenzo Duque. Duque had bragged in the informant's presence that it was easy to bring contraband past the check point.

(13) Telephone records indicate 179 calls were made from appellant's telephone to Lorenzo Duque.

(14) Between May 23 and June 14, 1983, appellant made fourteen telephone calls to the telephone of Terry Schopfer in Hunt County, Texas. A wiretap was authorized on that telephone on July 11, 1983. During an incoming call from appellant to that phone, appellant said that there was some number 1 grade stuff available and that the other party should get his money ready so that they could do business.

(15) On October 4, 1984, Sheriff Castello was advised by a reliable source of information that substantial quantities of cocaine were being brought into Falfurrias from Houston.

(16) In June 1984, an airplane landed at the Brooks County Airport at night without activating the runway lights.

(17) On June 23, 1984, officers had reliable information that a load of marihuana would land by airplane at a clandestine airstrip eleven miles west of Falfurrias between 11:00 and 11:30 p.m. The suspected aircraft landed at the designated strip.

(18) A Foremost Paving employee was almost always late on Mondays for work, even though the employee left his residence earlier than the usual time. The employee also acted suspiciously when loading his two suitcases onto the company truck. Telephone records showed that appellant telephoned Foremost Paving 33 times. Appellant made one call to a phone subscribed to by the above employee.

(19) In July 1984, a DPS investigator overheard three females talking about

"Sandy" in the H.E.B. store. One of the females stated that she and "Sandy" had escorted a load of dope to Austin, that another part of the load had been sent by bus, and that she had gotten bored while waiting and had called "Blanca." Appellant (Sandy Guerra) has a wife named Blanca. She further stated that when "El Orejon" had finally arrived, he arrived with suitcases which were full of hashish which Sandy and "El Orejon" had referred to as "boards."

(20) In August 1982, a cocaine trafficker from Live Oak County was assisting the DPS in a narcotics purchase. The trafficker told the DPS that the intended seller of the cocaine, Felipe Rodriquez, got two pounds from "Sandy." A credible source told Sheriff Castellano that Rodriquez was an active member of appellant's organization.

(21) A credible informant told Officer Brooks that appellant and Rudy Ramirez were driving back and forth on a county road on September 3, and that they then entered the Sanchez ranch.

(22) The night before, a low flying airplane had circled the Sanchez ranch without lights after a spotlight had been flashed into the air from behind the hay barn. The plane's engine changed pitch at regular intervals as if something could have been accurately dropped from the plane.

(23) Photographs made by DPS aircraft later showed signs of vehicular traffic in the freshly plowed field.

(24) An informant stated that similar incidents had occurred at the Sanchez ranch on at least three different occasions.

(25) On August 31, 1984, a plane without lights flew slowly, at a low altitude over the Moreno ranch. The plane made three passes.

(26) On September 11, 1984, appellant's truck was seen at the Moreno ranch.

(27) On September 12, 1984, the informant saw a small plane make several passes over the Moreno ranch. Following the passes, traffic to the Moreno ranch was very heavy.

(28) On September 13, 1984, a longtime associate of appellant came to the Moreno ranch.

(29) Appellant possibly had a financial connection with Robert Kibbe, who owns property which had active clandestine airstrips.

In addition to these facts, the affidavit contains a summary showing the number of times particular telephone numbers were called from appellant's phone. These records show numerous telephone calls between appellant and others suspected to be involved in narcotics trafficking. These calls were discovered through the use of a pen register, a device which attaches to a phone and is capable of recording only outgoing numbers dialed from that line. *See* Tex.Code Crim.Proc.Ann. art. 18.21 (Vernon Supp.1988).

The State does not point to any particular paragraph or paragraphs in its argument that the affidavit sets forth sufficient facts to establish probable cause. Instead, after briefly summarizing the warrant, the State merely concludes that the affidavit is more than sufficient to justify a conclusion by the magistrate that the telephones in question were being used for illegal purposes, and that evidence of illicit transactions pertaining to controlled substances would probably be recovered by recording such conversations.

Appellant makes a multi-faceted attack of the affidavit, contending that it states only conclusions without sufficient factual allegations, contains mere boilerplate recitations, contains allegations which are remote, alleges statements which are false, and attempts to incriminate him through his mere association with targets of drug rings.

While we ultimately agree with the State, we will not superficially declare the affidavit sufficient and gloss over certain of its apparent weaknesses and deficiencies.

We note at the outset that most of the cases cited by appellant predate *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, the Supreme

Court adopted the "totality of the circumstances" test to determine probable cause. This test has also been adopted as the Texas standard by the Court of Criminal Appeals. *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Crim.App., 1988).

*Gates* set forth the standards to be used by the magistrate issuing the warrant and the reviewing court:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that the probable cause existed.

Moreover, probable cause requires only the probability of criminal activity, not an actual showing of such activity. *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330–2331. This same standard was applied in *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App. 1984).

Shortly after *Gates* was decided, the United States Supreme Court determined that a good-faith exception to the exclusionary rule generally foreclosed challenges to the sufficiency of affidavits where a magistrate had issued a warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, relatively few recent cases apply the "totality of the circumstances" test to affidavits supporting search warrants, much less affidavits supporting wiretap authorizations. Nonetheless, we apply the test set forth in *Gates*, because, while Texas now has a statutory good-faith exception to the exclusionary rule, Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp.1988), there was no good-faith exception at the time applicable to this case. *See Dees v. State*, 722 S.W.2d 209 (Tex.App.—Corpus Christi 1986, pet. ref'd).

We first address appellant's contention that the various informants were not shown to be reliable and credible.

■ In *Eisenhauer*, 678 S.W.2d at 953, an officer received his information from "a reliable informant, confidential." He did not state facts to support his conclusion that the informant was credible. The Court of Criminal Appeals noted that such a mere assertion or conclusion is insufficient to establish credibility, but went on to hold that the arrest in that case was legal because the informant was, in effect, corroborated through independent surveillance and verification, even though the defendant was not seen to be doing anything criminal. The Court quoted what the United States Supreme Court stated in *Gates*: "[I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands." Thus, an informant's reliability and credibility may be verified by his past history of giving credible information to police, or through independent verification of the intelligence forwarded to police.

Certain paragraphs, such as what we have numbered 1, 2, 3, 15, 20, 21, 22, 24, 25, 26, 27, 28, and 29, appear to lack the factual bases to credit the informant's intelligence, or they do not implicate appellant in criminal activity. Other paragraphs, such as 5, 11, 12, and 18, appear to contain sufficient detail to credit the informant's information. Still other paragraphs, such 4, 6, 8, 9, 10, 13, 14, 16, 17, 19, and 23 are based on police surveillance and do not rely on informants. In determining whether the judge who issued the warrant had a substantial basis for concluding that probable cause existed, we will not consider the above paragraphs based on informant information not shown to be reliable or relevant.

■ Appellant further complains that portions of the affidavit contain hearsay based on hearsay. Hearsay on hearsay, however, does not vitiate an affidavit so long as there is a substantial basis for

crediting the hearsay. *United States v. Garcia*, 785 F.2d 214 (8th Cir.1986); *United States v. Kleve*, 465 F.2d 187 (8th Cir. 1972). Appellant seems to overlook the affiant's ability to rely on information obtained by other officers engaged in the investigation. *See Gish v. State*, 606 S.W. 2d 883 (Tex.Crim.App.1980).

■ Appellant also complains that his association with or telephone calls to persons suspected of drug dealing can not establish probable cause. While mere association may be insufficient, such activity between persons suspected of narcotics violations while subject to innocent interpretation when viewed in isolation, can also provide support, when combined with other factors, for a finding of probable cause. *See United States v. Brown*, 761 F.2d 1272, 1276 (9th Cir.1985); *United States v. Todisco*, 667 F.2d 255 (2nd Cir.1981).

There are sufficient facts in the affidavit to show that appellant communicated regularly by telephone with persons either known to be or suspected to be involved in narcotics, and there are other facts which suggest that these relationships were more than "mere association." While the associations do not establish probable cause, they contribute to the entire picture or totality that make up probable cause in this case.

■ Appellant also complains about the staleness of certain information. If the affidavit concerned a specific isolated criminal act, we would agree with appellant that portions of the affidavit concern matters too remote to provide a basis for probable cause. However, staleness is less significant when the affidavit presents a picture of on-going criminal activity. *See United States v. Domme*, 753 F.2d 950 (11th Cir. 1985); *United States v. Martino*, 664 F.2d 860 (2nd Cir.1981). By its very nature, organized criminal activity involves criminal activity occurring over a period of time, and that activity may be sporadic. An affidavit based on on-going criminal activity will, of necessity, detail facts which place specific criminal activity into perspective within the criminal episode. For this reason, events which might normally be considered stale may well provide necessary background for a finding of probable cause.

■ While we do not restrict ourselves to paragraphs 5, 6, 8, 9, 10, 11, 12, 13, 14, 18, and 19, we find that they provided sufficient facts for the magistrate to find probable cause when they are combined with the pen register information and the suspected narcotics activity of those persons appellant called or associated with.

Particularly damaging are paragraphs 14 and 19. In paragraph 14, the affiant states that the DPS conducted a narcotics investigation in Hunt County between May and August 19, 1983. During that period of time, a wiretap was authorized on a certain telephone. One of the callers was appellant. The transcription of the phone call was attached to the affidavit and the conversation could easily be interpreted as one involving drug negotiations.

In paragraph 19, the affiant states that Trooper Brooks overheard a discussion concerning "Sandy" in the Falfurrias H.E.B. store. There, one of the females detailed how she and Sandy had transported dope to Austin. This paragraph contains detailed information of that transaction. In addition, the female said she had gotten bored and called Blanca. Appellant's wife's name is Blanca. Because admissions of crime carry their own indicia of reliability, *United States v. DeCesaro*, 502 F.2d 604 (7th Cir.1974), this information can be credited to provide support for the probable cause finding.

However, it is the sum of the information contained within the affidavit, and not any one paragraph, which supports the trial court's order. As was stated in *United States v. Weinrich*, 586 F.2d 481, 490 (5th Cir.1978), "Probable cause is the sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers. We weigh not individual layers but the 'laminated' total."

Additionally, the affidavit should be viewed in a common-sense way. *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976). We find that the combined informa-

tion provided in the affidavit stated sufficient facts and provided a substantial basis for the trial court to find probable cause that appellant was committing felony offenses under the Controlled Substances Act and that an interception of his phone calls would provide evidence of such crimes. Appellant's third, sixth, seventh, eleventh and twelfth points of error are overruled.

In his fourth point, appellant contends that Tex.Code Crim.Proc.Ann. art. 18.20, § 6(b) requires the affiant to be the head of a local law enforcement agency. Appellant overlooks article 18.20, § 6(a) which authorizes the director of the DPS to request a wiretap authorization. Neither section 6(a) or (b) requires that the person requesting the order be the affiant. Appellant's fourth point is overruled.

In point five, appellant contends that the probable cause issue should have been submitted to the jury. We disagree. The legality or validity of the order authorizing the wiretap presents a question of law. The sufficiency of the affidavit was a question of law for the trial court. Moreover, even if appellant had presented evidence to show that portions of the affidavit were knowingly made false or with disregard for the truth under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978), the resolution of these matters remain questions of law for the trial court. *United States v. Ippolito*, 774 F.2d 1482 (9th Cir.1985). Point five is overruled.

In his eighth point, appellant contends that the wiretap application fails to state why other investigative procedures failed or were unlikely to succeed as required by art. 18.20, § 8(a)(3). We have reviewed that portion of the application and find it sufficient. We find no support for appellant's assertion that they are "mere boilerplate recitations." Point eight is overruled.

In point nine, appellant contends that error occurred because the first wiretap progress report was not produced by the State. Article 18.20, § 9(b)(3) provides that the trial court may require progress reports so that the judge may determine the need for continued interception. In this case, the State did not produce the first progress report at trial. Appellant did not object to its absence and cannot now complain.

Moreover, the same requirement exists in the federal wiretap statute and it has been held that the failure to make such reports are not grounds for suppression of the evidence obtained in the absence of express prejudice. *United States v. Kohne*, 358 F.Supp. 1053 (W.D.Pa.1973), *aff'd*, 485 F.2d 679, *aff'd*, 487 F.2d 1394 (3rd Cir.1973). Appellant did not show the trial court nor does he set forth on appeal how he was harmed by the State's failure to produce the report. Appellant's ninth point is overruled.

In his tenth point, appellant complains that the affidavit contained intentional misstatements. Appellant presented evidence to the trial court on this matter. Appellant's evidence consisted of witnesses who testified that they were not drug associates of appellant. This evidence alone does not establish that the affidavit contained either false statements or intentional misstatements. Appellant's tenth point is overruled.

In points of error thirteen through sixteen, appellant contends that the trial court erred in allowing the State to use written English transcripts of the recorded telephone calls. Throughout the course of the trial, the State furnished the jury with written transcripts of the recorded telephone calls which had been almost entirely in Spanish. Appellant filed four motions to prevent use of the written English transcripts, arguing that: (1) the tapes themselves were the best evidence of the conversations and that the written English translation prepared by the State was impermissibly suggestive; (2) the transcripts would bolster the testimony of witnesses; (3) the transcripts were prepared in advance of trial; and (4) the transcripts would confuse or mislead the jury because they reflected what law enforcement agents thought they heard.

Appellant's written motions were not ruled on by the trial court, but similar oral

objections to the transcripts were made by appellant at trial and overruled by the trial court.

Appellant cites *Lewis v. State*, 529 S.W.2d 533 (Tex.Crim.App.1975) in support of his points. The Court of Criminal Appeals substantially discarded *Lewis* in *Garrett v. State*, 658 S.W.2d 592 (Tex.Crim. App.1983). In *Garrett*, as in the present case, the transcripts were not offered into evidence and were used throughout the trial only as a juror aid.

The State consistently employed the same procedure in the introduction of evidence from the tapes. The actual tapes were played to the jury. The voices were identified and a summary of the conversation was offered and admitted into evidence. The purported verbatim English translations were not offered as evidence, nor are they included in the appellate record.

In *Garrett*, the Court approved the use of transcripts used in this manner. The only difference between this case and *Garrett* is that here the tapes were primarily in Spanish while in *Garrett* they were presumably in English. This is a significant difference which should not be overlooked and which we must consider in analyzing the point of error.

In *Garrett*, as in the present case, the trial court instructed the jurors that the transcripts were only for use as an aid and if there was any variance between what the jurors heard on the tape and what they saw on the transcript, the jurors should remember what was on the tape and not on the transcript. While the trial court gave the same instruction in this case, the tapes were in Spanish and the translations were in English. Accordingly, the risk that the jurors would rely on the written English translation is much greater in this case than in *Garrett*. We recently explored much the same issue in *Leal v. State*, 711 S.W.2d 702 (Tex.App.—Corpus Christi 1986) (pet. granted on other grounds). There, we held that when foreign recordings are relied upon for evidence, an official translator should testify and translate the tape into English.

We do not find, however, that reversible error occurred. First, all of appellant's trial objections appear to relate to the admission into evidence of the transcripts prepared by the State. The transcripts were never offered or admitted into evidence.

Second, throughout the course of the trial, appellant repeatedly cross-examined witnesses about the translations supplied by the State. It is apparent from the examination of the witnesses that the transcripts were not the actual evidence.

Third, the actual tapes were admitted into evidence and appellant had the same opportunity to provide his own translations or to present evidence concerning the interpretation given to the Spanish conversations by the State's transcript.

Fourth, the jury was instructed that the transcript was only for their aid. While this instruction may not have been very potent because of the language differences, it was sufficient to convey that the State transcripts were not authentic.

Fifth, the State actually introduced into evidence English summaries of the conversations. Appellant has not brought any point of error concerning these actual State exhibits. Without any point raising error in the admission of these exhibits, we do not see how the use of English transcripts prepared by the State can be a basis for reversible error. We note here, absent any foreign language problem, that appellant has not shown that the summaries would be inadmissible as evidence under Tex.R. Crim.Evid. 1006.

For the above stated reasons, we overrule appellant's thirteenth through sixteenth points of error.

In point of error seventeen, appellant contends that the trial court erred in overruling his motion requesting findings of fact and conclusions of law when the trial court overruled his motion to suppress the evidence obtained through the wiretap. Appellant cites *Hester v. State*, 535 S.W.2d 354 (Tex.Crim.App.1976) for support. *Hester*, however, is not controlling as it deals with a challenge to a defendant's confession. Where the voluntariness of a confes-

sion is challenged, the trial court is required to make findings. Tex.Code Crim. Proc.Ann. art. 38.22 (Vernon 1979). There is no statutory authorization for a trial court to make findings and conclusions when overruling a motion to suppress other evidence. *Cf.* Tex.Code Crim.Proc.Ann. art. 38.05 (Vernon 1979). *See also Mattias v. State,* 731 S.W.2d 936 (Tex.Crim.App. 1987). Appellant's point is overruled.

In point eighteen, appellant contends that the trial court erred when it arbitrarily restricted his voir dire to one hour. It appears that the trial court informed both parties before questioning that each side had one hour to voir dire the jury panel. Appellant objected to this limitation before he questioned the jurors. Appellant did not later object, ask for additional time, or present to the trial court questions that he wanted to ask the jury but could not. Under these circumstances, no harm and no reversible error is shown. *See Ratliff v. State,* 690 S.W.2d 597 (Tex. Crim.App.1985); *Thomas v. State,* 658 S.W. 2d 175 (Tex.Crim.App.1983); *Whitaker v. State,* 653 S.W.2d 781 (Tex.Crim.App.1983). Appellant's eighteenth point of error is overruled.

In point nineteen, appellant contends the trial court erred when it refused to sequester the jury. Before trial appellant moved to sequester the jury upon its selection. While there is no overruling of the motion on the record, from statements made by counsel for both parties, it is apparent that the motion was overruled. Tex.Code Crim.Proc.Ann. art. 35.23 (Vernon 1966) allows for the separation of the jury until the court has given its charge. The trial court was not required to sequester the jury upon its selection. Appellant's nineteenth point of error is overruled.

In point of error twenty, appellant contends that reversible error occurred because the prosecutor failed to disclose that one of the State's key witnesses, Arnoldo Trevino, had been given immunity. As will be seen in our discussion on sufficiency under point of error 29, Trevino was an accomplice witness as a matter of law and, perhaps, the State's most important witness.

Trevino testified at trial that no deals or promises had been made for his testimony. He did admit that he hoped something favorable would happen as a result of his testimony. The prosecutor informed the jury that no deals had been made.

If the State had made a deal with Trevino, either tacitly or explicitly, appellant would be entitled to a new trial. *Granger v. State,* 683 S.W.2d 387 (Tex.Crim.App. 1984); *Burkhalter v. State,* 493 S.W.2d 214 (Tex.Crim.App.1973). There is no evidence, however, that Trevino was promised anything in exchange for his testimony, that the State misled the jury, or that the State allowed Trevino to present false testimony or perjure himself. Appellant's twentieth point is overruled.

In his twenty-first point of error, appellant contends that he was entitled to an acquittal as a matter of law because he pleaded "not guilty" at his arraignment on the original indictment and was later reindicted for the same offense. Appellant was first indicted on October 21, 1985. He was reindicted on March 31, 1986. He does not assert that a jury was ever sworn and empaneled on the original indictment; merely, that he pleaded not guilty at the arraignment.

Appellant's argument is without merit because jeopardy never attached to the original indictment. *United States v. Mendoza,* 473 F.2d 692 (5th Cir.1972); *Sewell v. State,* 696 S.W.2d 559 (Tex.Crim.App.1983). Appellant's point is overruled.

In point of error twenty-two, appellant complains that the evidence is insufficient to prove that he conspired to deliver marihuana and cocaine. The indictment alleged that appellant and others "conspired to commit the offense of unlawful delivery, dispensation, and distribution of controlled substances namely cocaine and marijuana...." The evidence introduced at trial did not show that appellant conspired to deliver cocaine, and conspiracy to deliver cocaine was not submitted to the jury. Appellant argues that since the indictment

alleged a conspiracy to deliver both marihuana and cocaine, the State was required to prove both in order to gain a conviction. We disagree.

The State may charge one or more modes or phases of an offense in the conjunctive in one count and proof of either will authorize the conviction. *Mattias v. State,* 731 S.W.2d 936 (Tex.Crim.App.1987); *Sidney v. State,* 560 S.W.2d 679 (Tex.Crim.App.1978); *Garcia v. State,* 537 S.W.2d 930 (Tex.Crim.App.1976). Appellant's point is overruled.

In his twenty-third point of error, appellant contends that the State improperly allowed Arnoldo Trevino to testify falsely and commit perjury when Trevino testified that call 55 was between himself and appellant, while at the same time, State's witness Eduardo Olivarez, another accomplice witness, testified differently.

We do not find sufficient factual support in the record to show that Trevino testified falsely or committed perjury. Trevino testified that he thought he was the speaker on call 55. The other accomplice witness, Eduardo Olivarez, testified that the voice on call 55 was not Trevino's.

Trevino was extensively cross-examined about his identification of the voice. He testified that he thought he remembered the conversation and thought the voice was his. The recorded conversations were played for the jury. While there certainly is a conflict between the State's witnesses concerning whose voice was recorded on call 55, such conflict does not show that either witness knowingly testified falsely, nor does it show that the State relied on perjured testimony or purposefully failed to correct false testimony. Appellant's point is overruled.

Appellant contends in point of error twenty-four that the State allowed DPS Trooper Brooks to falsely testify to appellant's location at a particular time when "other evidence" proved that appellant was at another location. A review of the evidence does not prove that appellant was at another location and does not show Brooks testified falsely. Appellant's point is overruled.

In point of error twenty-five, appellant requests that this Court dismiss the indictment against appellant because of unconscionable police conduct. Appellant made a similar request of the trial court at the conclusion of trial. It was denied.

Appellant claims police misconduct occurred because Department of Public Safety personnel who monitored the appellant's telephone did not properly follow minimization instructions, and because the Department of Public Safety failed to minimize monitored telephone calls, thereby violating the attorney-client privilege and husband-wife privilege.

The DPS's policy is not to monitor calls which do not appear related to criminal activity. If, after listening to a portion of a call, the monitor determines that the party other than the defendant is not involved in the criminal activity, the monitor is to cease recording the call.

The United States Supreme Court has determined that minimization should be judged by a standard of reasonableness. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Where the phone is in the residence of the suspected organizer, where the conspiracy is thought to be widespread, and where ambiguous or coded language is used, extensive surveillance is reasonable. *United States v. Nersesian,* 824 F.2d 1294 (2nd Cir.1987). Applying these factors to the circumstances indicate that extensive surveillance was warranted in this case.

We reject appellant's complaint that certain calls between himself and his wife, and between himself and an attorney, should not have been recorded. A review of the evidence shows that appellant's wife and the attorney in question were both conspirators. Accordingly, we do not consider the Department's failure to "minimize" these calls as evidence of police misconduct. Moreover, only those calls introduced into evidence are in the appellate record, so we are unable to determine the

extent of surveillance actually conducted by the State.

Appellant also alleges police misconduct in that the District Attorney who prosecuted the case was a fact witness to appellant's arrest. Appellant's complaint is wholly without merit. Moreover, appellant examined the District Attorney about his involvement in appellant's arrest, and nothing shows that the prosecutor participated in arresting appellant.

■ Likewise, appellant's complaint that Trooper Brooks should not have participated in the case because Brooks's wife had dated appellant is without merit. Brooks testified that when his wife was fourteen or fifteen, some eight years before they were married, she had dated appellant. We do not find that this evidence shows any police misconduct. Appellant's twenty-fifth point of error is overruled.

In his twenty-sixth point of error, appellant contends that the trial court erred in failing to grant appellant's motion for mistrial when the State called appellant to testify.

The record shows that at the conclusion of one witness' testimony, the State passed the witness and appellant's attorney responded "no questions." The prosecutor then stated: "Servando—I am sorry. Arnoldo Trevino." Appellant did not object, but he did move for a mistrial. The court did not respond to appellant's motion and Arnoldo Trevino took the stand.

While appellant's motion for mistrial may have been sufficient to bring the matter to the trial court's attention, *see Montoya v. State,* 744 S.W.2d 15 (Tex.Crim.App.1987), appellant did not obtain a ruling on his motion. In the absence of an adverse ruling, nothing is preserved for appellate review. Moreover, if the prosecutor was intending to call appellant, he caught himself before he finished appellant's name, so that it is not directly apparent that the State was calling appellant to testify. Appellant's point is overruled.

■ In his twenty-seventh and thirtieth points of error, appellant contends that the trial court erred in preventing him from

effectively cross-examining State witnesses Arnoldo Trevino and Ruben Molina when it denied his requests for statements previously made by these witnesses. While the statements should have been made available to appellant under the *Gaskin* Rule, *Gaskin v. State,* 172 Tex.Cr.R. 7, 353 S.W. 2d 467 (App.1962), appellant has not shown harm in this case.

Appellant must bring forward in the appellate record the statement to show harm, or he must show that he has been denied the opportunity to have the report made a part of the appellate record. *Pinson v. State,* 598 S.W.2d 299 (Tex.Crim.App.1980); *Moore v. State,* 509 S.W.2d 349 (Tex.Crim. App.1974). Because the appellant has taken no steps to have the written statement included in the appellate record, he has preserved nothing for review. *Moore,* 509 S.W.2d at 352. Appellant's twenty-seventh and thirtieth points are overruled.

■ Appellant contends in his twenty-eighth point of error that the trial court erred when it refused to allow a defense witness to testify about appellant's reputation in Brooks County. Appellant has failed to preserve this error for review because he has failed to show what the testimony of the witness would have been. Tex.R.Crim.Evid. 103; *Baldwin v. State,* 538 S.W.2d 109 (Tex.Crim.App.1976). Appellant's point is overruled.

In his twenty-ninth point of error, appellant contends that the evidence is insufficient to sustain the conviction "since no one corroborated the testimony of Arnoldo Trevino, an accomplice witness."

■ In Texas, a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. Tex.Code Crim.Proc. Ann. art. 38.14 (Vernon 1979). The test for the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the de-

fendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Reed v. State,* 744 S.W.2d 112 (Tex.Crim. App.1988).

 The non-accomplice evidence in this case was produced through the wiretaps on appellant's telephones and through police surveillance.

The State recorded hundreds of telephone calls made to and from appellant's residence and business. These recordings were played before the jury. After each tape was played, State witnesses identified the voices on the recording. The delivery or distribution of marihuana was never explicitly mentioned on any tape. The discussions on these tapes most often were in vague terms and superficially about topics other than marihuana distribution.

Once the tapes had been played, they were summarized into English and witness Trevino would explain what the callers were discussing on the telephone. Some of Trevino's testimony concerned telephone calls in which he was a participant or had first-hand knowledge of their intended meanings because of his participation in the marihuana distribution network. In most cases, however, Trevino was interpretting these vague or ambiguous calls only from his perspective or involvement in the organization, and not through his personal involvement in the particular discussed transaction.

The non-accomplice testimony clearly connects appellant to the commission of the offense. The State, through circumstantial evidence, surveillance, and the telephone conversations showed that appellant was organizing the transfer of hundreds of pounds of marihuana.

On three occasions following the monitoring of appellant's telephone conversation, and in conjunction with surveillance by the DPS, sizable quantities of marihuana were seized from persons associated with appellant. As the State points out, "[f]rom simply the words spoken, without any interpretation by anyone, it would be perfectly obvious to the jury ... that the parties to these conversations were refer-

ring to the delivery and transportation of ... marihuana."

The State points in particular to the arrests of Martin Guerrero, Eduardo Olivarez, and Rogelio Garza. In each instance phone calls were intercepted in which appellant directed the activity of these persons. Thereafter, police surveilled the participants in the phone calls or places referred to in the phone calls. These conversations vaguely discussed the amount of marihuana to be transported and details of transportation. As a result of the surveillance, on three different occasions, the persons suspected of transporting marihuana were actually arrested. In each instance, large quantities of marihuana were seized. Circumstances of the arrest (such as the amount of marihuana, the packaging, the use of courier's family, etc.) corresponded to information learned through the intercepted telephone calls.

The evidence shows that appellant received large quantities of marihuana from Mexico through Lois Ferrel Aguilar. The wiretap evidence shows conversations between Aguilar and appellant which were related to the distribution and sale of marihuana. From appellant's residence in Falfurrias, appellant would arrange the transfer of marihuana he had purchased from Aguilar to persons in Florida, Houston, and Austin. Numerous individuals were involved in appellant's network.

The evidence shows that appellant did not sell marihuana in quantities which could be used for personal use. Instead, he sold marihuana in quantities of over a hundred pounds. As such, he could be described as more a wholesaler than a retailer.

His network involved the persons from whom he bought and sold the marihuana, the persons who stored the marihuana for him, and the persons who transported it to and from his storage. The recorded telephone calls to and from these individuals, combined with the independent surveillance of appellant's activities, the marihuana arrests, and evidence seized from appellant's house, make the corroborating evidence

overwhelmingly sufficient. Appellant's twenty-ninth point of error is overruled.

■ In point thirty-one, appellant contends that the trial court denied his request to instruct the jury that the State is bound by the exculpatory statements of its witnesses. Although appellant does not cite *Palafox v. State*, 608 S.W.2d 177 (Tex. Crim.App.1979), he relies on the principle stated there for support of his requested charge. The "new" rules of criminal evidence, however, have abolished the "voucher" rule. *Stills v. State*, 728 S.W.2d 422, 425 n. 2 (Tex.App.—Eastland 1987, no pet.). Since the State is not bound by the statements of their witnesses, the rationale for appellant's requested charge is without basis. Appellant's thirty-first point of error is overruled.

■ In his thirty-second point of error, appellant contends that the trial court erred in denying his sixth requested jury instruction. Appellant argues that since money changed hands, he was entitled to a charge on remuneration. Appellant fails to explain and we do not understand why he requested that remuneration be defined, why appellant would be entitled to the definition, or how it applies to this case. Appellant states only that since there was evidence of money changing hands for drugs, appellant was entitled to a charge on remuneration. Appellant's contention is wholly without merit. Appellant's thirty-second point of error is overruled.

■ In his thirty-third point of error, appellant argues that the trial court erred in not giving the jury his requested charge on appellant's plea of former jeopardy. Appellant contends that allegation 409 involved the same incident which the State of Florida failed to prosecute. Appellant argued at trial that since Florida had dismissed charges against him, the State of Texas could not base its prosecution on the same incident.

The record fails to show that jeopardy ever attached to appellant in the State of Florida. Moreover, even if it did, under the doctrine of dual sovereignty, a prosecution in Texas would not be barred by previous jeopardy in Florida. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Appellant's thirty-third point is overruled.

■ In his thirty-fourth point of error, appellant contends that the trial court committed reversible error when it refused certain of appellant's motions in appellant's absence. The record shows that the trial court denied appellant's requested jury instructions and motion to make findings of fact and conclusions of law, when appellant was absent.

While Tex.Code Crim.Proc.Ann. art. 33.-03 (Vernon Supp.1988) requires that a defendant be personally present at the trial, the absence of the defendant when only questions of law are considered in chambers will not cause reversal unless the presence of the defendant bears "a reasonably substantial relationship to the opportunity to defend." *Mares v. State*, 571 S.W.2d 303 (Tex.Crim.App.1978). As in *Mares*, the appellant's absence occurred when only questions of law were considered. We find no harm to the appellant. Appellant's thirty-fourth point is overruled.

In his points of error thirty-five and thirty-six, appellant contends that the State committed reversible error in its closing argument. In point of error thirty-five, appellant complains that the prosecutor attacked defense counsel by criticizing his lack of respect for the witness Trevino.

Defense counsel had previously argued to the jury as follows:

On Mr. Trevino, Arnold Trevino. As you recall when Mr. Trevino was on the witness stand, I always called him "Mr. Trevino," even though some other people were calling him by his nickname. I always respect people. I may not believe them, but I respect them. And when Mr. Trevino was up there, not everybody called him this way, but I did...."

■ During his closing argument, the prosecutor replied that defense counsel had not shown respect for Trevino because counsel kept going "on and on and on" that Trevino's deceased father had been in the

drug business. The prosecutor's argument was invited and responsive to defense counsel's argument. Responses to opposing counsel's arguments are within the proper realm of jury argument. *Albiar v. State,* 739 S.W.2d 360 (Tex.Crim.App.1987); *Johnson v. State,* 611 S.W.2d 649 (Tex.Crim. App.1981).

■ In point of error thirty-six, appellant complains of the prosecutor's argument at the punishment phase of trial that drugs lead to the deterioration of mankind, burglaries, thefts, and "young girls going through prostitution." Once again, we find that the prosecutor's argument was in response to, or was invited by, appellant's argument. Appellant's counsel argued for leniency at the punishment phase. In furtherance of this plea he asked:

"What evidence of violence is there of Servando Guerra, Sandy? What has he done? Who has he killed? Who has he injured? Who has he stabbed? Who has he shot? As you consider this case, I want you to consider that, because Mr. Bell is going to try to—I anticipate—is going to argue to you to punish this man severely. But I want you to remember, what violence has been in the heart of this man. What violence has he done to any human being?"

There was, of course, no evidence that appellant had committed any violent act or harmed anyone. This type of argument could only be answered by the prosecutor's pointing out why drug trafficking is serious crime, and that indeed there are victims and harm to humanity as a result of drug trafficking. The prosecutor was doing nothing more than giving examples of the evils of drug trafficking. Appellant's thirty-fifth and thirty-sixth points of error are overruled.

■ In his thirty-seventh point of error, appellant contends that he suffered egregious harm because the punishment charge contained an instruction on the effect of parole and good conduct time. [Appellant had objected to the parole charge instruction before the charge was read to the jury, complaining that the statute allowing the jury instruction about the effect or parole violated the separation of powers provision of the Texas Constitution.] It is now settled that the charge is unconstitutional and that this charge will cause reversal unless the appellate court finds that the error was harmless beyond a reasonable doubt. *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1988) (not yet reported) (Opinion on Rehearing).

The prosecutor in this case requested that the jury assess a ninety-nine year sentence and a $100,000 fine. Appellant pled for leniency, making repeated requests for probation. The jury assessed punishment at 99 years without a fine.

Appellant's crime is a serious one, and the jury could easily have found that appellant repeatedly committed drug offenses throughout the course of the organized criminal activity. The evidence also shows that appellant was not just a participant in organized criminal activity, but was indeed an organizer. On the other hand, appellant had no prior criminal record, and the statute authorizes a wide range of punishment for this offense, including probation. In his final argument, the prosecutor referred to the parole charge and explained how parole eligibility was determined. While it is possible that the parole charge may not have made a contribution in this case to the maximum 99 year prison term, the possibility that it did not contribute to the punishment is not the standard by which we are to determine whether the error requires a reversal. Because we are not convinced beyond a reasonable doubt that the parole charge made no contribution to the punishment, we sustain appellant's thirty-seventh point of error. Tex.R.App.P. 81(b)(2). *Cf. Zimmerman v. State,* 754 S.W.2d 402 (Tex. App.—Corpus Christi, 1988); *Rodriquez v. State,* 745 S.W.2d 572 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Hinojosa v. State,* 744 S.W.2d 319 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Barreda v. State,* 739 S.W.2d 368 (Tex.App.—Corpus Christi 1987, pet. granted).

Accordingly, the judgment of conviction is ordered set aside and appellant is remanded to the custody of the Sheriff of Jackson County to answer the indictment in this cause, in accordance with *Ex parte Klasing,* 738 S.W.2d 648 (Tex.Crim.App.

1987). *See* Tex.Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp.1988).

## OPINION ON STATE'S MOTION FOR REHEARING

In our original opinion, we found merit in appellant's thirty-seventh point of error which challenged the parole charge found unconstitutional in *Rose v. State*, 752 S.W. 2d 529 (Tex.Crim.App.1988). The State has now filed a motion for rehearing, claiming in its sole point that there was no thirty-seventh point of error before this Court.

The State notes that we denied appellant's motion to file a supplemental pro se brief on November 12, 1987, and contends that we reviewed the parole charge issue as unassigned error. We did not. The State appears to have overlooked appellant's motion, filed in this Court on December 11, 1987, to supplement counsel's brief with point of error thirty-seven. This Court granted that motion on December 23, 1987. Accordingly, appellant's thirty-seventh point of error was before this Court at the time of submission, and the issue raised was not addressed as unassigned error.

The State's motion for rehearing is OVERRULED.

NYE, Chief Justice, concurring.

I respectfully concur with the majority's opinion. In the case before us, the majority found reversible error in the sentencing phase of appellant's trial. They would set aside appellant's conviction and remand him to the custody of the sheriff of Jackson County to answer the indictment in this cause, in accordance with *Ex parte Klasing*, 738 S.W.2d 648 (Tex.Crim.App.1987). *See* Tex.Code Crim.P.Ann. Art. 44.29(b) (Vernon Supp.1988). In *Klasing*, the Court of Criminal Appeals found reversible error in the sentencing phase of the applicant's trial. The Court set aside his conviction and remanded him to the custody of the sheriff to answer the indictment. The State argued that the case should have been remanded only for the punishment phase according to the provisions of Article 44.29(b). The Court of Criminal Appeals stated that it neither ordered the applicant to receive a new trial on the merits nor a new trial only on punishment. The Court also stated that Article 44.29(b) is directed only to the trial court which must take the appropriate action in appropriate circumstances. The correct forum to urge the application of Article 44.29(b) is the trial court. *Klasing*, 738 S.W.2d at 650–51.

Although the Court of Criminal Appeals announced in *Klasing* that in cases such as this case Article 44.29(b) is directed to the trial court to take the appropriate action and that the proper forum to urge such action is in the trial court. If such is the correct interpretation of Article 44.29(b), I would *urge* the trial court to retry the defendant on the punishment phase only. Appellant has had a fair, lengthy, and expensive trial for all concerned based upon the charges levied against him in the indictment. The facts of appellant's case and the applicable law have been thoroughly reviewed by us. We have found no reversible error in the sentencing phase of appellant's trial. The only error lies in the punishment phase.

Nothing can be accomplished by a retrial of the entire case. I therefore suggest that, in the interest of justice and judicial economy, appellant's case should be retried on the punishment phase of the case only as soon as possible while witness are available for the appellant as well as for the State.