**David Bradley BILLS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–338–CR.**

Court of Appeals of Texas,
Fort Worth.

May 4, 1993.

Keith E. Jagmin, Dallas, for appellant.

Barry L. Macha, Crim. Dist. Atty., Gerald W. Taylor, John W. Brasher, Asst. Dist. Attys., Wichita Falls, for appellee.

Before WEAVER, LATTIMORE, JJ. and HARRY HOPKINS (Retired, Sitting by Assignment), J.

## OPINION

LATTIMORE, Justice.

Appellant, David Bradley Bills ("Bills"), pleaded guilty to the offense of engaging in organized criminal activity, TEX.PENAL CODE ANN. § 71.02 (Vernon Supp.1993), and the trial court assessed his punishment at fifteen years confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Bills seeks a reversal of his conviction on the ground that the trial court erred by not suppressing evidence derived from a wiretap. *See* TEX.CODE CRIM.PROC.ANN. art. 18.20 §§ 2, 14 (Vernon Supp.1993).

We affirm.

On May 18, 1989, Wichita County, Texas criminal district attorney Barry L. Macha made a sworn application to Judge David Cleveland, 29th District Court, Palo Pinto County, Texas for an order authorizing the interception of wire communications from a telephone with the number (817) 692–1232 in a business/residence located at 3701 F.M. 369, Wichita Falls, Wichita County, Texas. A seventy-four page long affidavit by Thomas J. Holland, an officer with the Texas Department of Public Safety, Narcotics Service, and Bobby L. Dilbeck, an officer with the Wichita Falls Police Department, was submitted in support of the application. Judge Cleveland issued the intercept order as requested on the next day, May 19, 1989.

On June 6, 1989, Macha made a second sworn application to Judge Cleveland requesting an order authorizing the interception of wire communications from a telephone with the number (817) 767–3319 in a residence located at 2100 Santa Fe, # 705, Wichita Falls, Wichita County, Texas. A forty-three page long affidavit by Officer Holland was submitted in support of the application. Judge Cleveland issued a second intercept order as requested later that same day.

Prior to the date of trial, Bills moved to suppress "all evidence derived directly or indirectly from wiretaps of telephone conversations in which Defendant was involved or was a party." The trial court denied Bills's motion to suppress and admitted the wiretap evidence.

### Point of Error

In a single point of error, Bills complains that the trial court erred in denying his pretrial motion to suppress because the officers' supporting affidavits failed to set forth sufficient facts to enable the issuing judge to determine, as required by TEX. CODE CRIM.PROC.ANN. art. 18.20 § 9(a)(1), (2) (Vernon Supp.1993), that (1) there was probable cause to believe that Bills was committing, or had committed, or was about to commit a particular offense enumerated in TEX.CODE CRIM.PROC.ANN. art. 18.20 § 4 (Vernon Supp.1993), and (2) there was probable cause to believe that particular communications concerning that offense would be obtained through the interception.

In *Guerra v. State*, 760 S.W.2d 681 (Tex. App.—Corpus Christi 1988, pet. ref'd), the court used the "totality of the circumstances" test for determining whether probable cause exists for a judge to issue an order authorizing the interception of wire communications. *Id.* at 685, 688. This test simply requires that the issuing judge "make a practical, common sense decision whether, given all the circum-

stances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that" the interception will provide evidence of the commission of a felony (other than felony possession of marihuana) under Chapter 481, Health and Safety Code, or Section 485.033, Health and Safety Code or of a felony under Chapter 483, Health and Safety Code. *See id.;* TEX.CODE CRIM.PROC. ANN. art. 18.20 § 4 (Vernon Supp.1993). The duty of a reviewing court is simply to ensure that the issuing judge had a "substantial basis for concluding" that probable cause existed. *Guerra,* 760 S.W.2d at 688.

In his brief, Bills separately attacks each of the two supporting affidavits. As to the seventy-four page long affidavit of Officers Holland and Dilbeck submitted in support of the May 18, 1989 application, Bills labels the statements on pages one through nineteen as "wholly conclusory," "utterly immaterial," and "stale and immaterial." If we assume, without deciding, that Bills is correct and disregard the statements contained on those pages, the following allegations remain on pages nineteen through thirty-three:

(1) Officer Dilbeck was contacted by K——L——F—— ("F——") on April 28, 1989.

(2) F—— had been arrested in Baltimore, Maryland on November 2, 1988 for possession of cocaine with intent to deliver.

(3) F—— had been introduced to Bills by L——D——D—— ("D——").

(4) F—— told Officer Dilbeck that he began delivering cocaine to Bills in December 1987.

(5) F—— told Officer Dilbeck that Bills had contacted D——T—— ("T——") in Florida to arrange the cocaine purchases.

(6) F—— told Officer Dilbeck that he made at least three trips per month to Florida with money supplied by Bills to purchase cocaine and that the cocaine he was arrested for possessing in Maryland had been purchased for Bills.

(7) After making the purchases in Florida, F—— would call Bills either at his residence or on his mobile phone to notify Bills that the purchase had taken place and that he would soon be returning to Wichita Falls to deliver the cocaine to Bills.

(8) F—— would deliver the cocaine either to Bills' residence or D——'s residence.

(9) In June or July 1988, F—— and Bills both drove to Florida to purchase cocaine from T——. Upon returning to Wichita Falls, they drove to Bills's trailer on F.M. Road 369, Wichita Falls, Wichita County, Texas.

(10) F—— was present during telephone conversations between Bills and C——C——B—— ("B——") during which Bills would instruct B—— to deliver cocaine and collect money.

(11) F—— told Officer Dilbeck that Bills used the telephone at his residence to talk to T—— regarding cocaine transactions.

(12) F—— told Officer Dilbeck that Bills used the telephone at his residence to talk to F—— regarding the details of cocaine transactions, including the time and location for deliveries and the transfer of purchase money.

(13) F—— told Officer Dilbeck that he and Bills use prearranged codes to discuss cocaine transactions on the telephone.

(14) F—— told Officer Dilbeck that from November 2, 1988 to April 19, 1989, F—— had spoken with Bills on the telephone several times. During one conversation, Bills told F—— that T—— owed him money due to a discrepancy in a previous cocaine transaction.

(15) On April 28, 1989, Officer Dilbeck monitored a telephone call made by F—— to number (817) 692–1232, the business/residence of Bills.

(16) During that telephone conversation, F—— spoke with Bills, Bills's wife, and B——. B—— told F—— that F—— owed him money as a result of F——'s arrest in Maryland and the seizure of the cocaine.

In addition to these facts, the affidavit contains the results of a pen register on telephone number (817) 692–1232.[1] These

---

1. A pen register is a device which attaches to a telephone and is capable of recording only out-

records show numerous telephone calls between Bills and others reasonably suspected to be involved in narcotics trafficking in the Wichita Falls area.

Bills contends that "[t]he hearsay statements of [F——] ... are in many instances merely conclusory ... [and] not in any manner tied down to any reasonably specific time period." Specifically, he insists that drug transactions more than six months old are stale and that the allegation regarding a telephone conversation between F—— and Bills are insufficient to show probable cause because the date on which the conversation occurred was not alleged.

■■■ The amount of delay that will make information stale depends on the particular facts of a case, including the nature of the criminal activity. *See Ellis v. State,* 722 S.W.2d 192, 196 (Tex.App.—Dallas 1986, no pet.) (opinion on remand). Where organized criminal activity is concerned, staleness is less significant because, by its very nature, such on-going criminal activity occurs over a period of time, and may be sporadic. *See Guerra,* 760 S.W.2d at 689. Consequently, events which might otherwise be considered stale may well provide necessary background for a finding of probable cause. *See id.* In this case, six months is not too long in light of the fact that the criminal activity had been on-going for several years. As to the lack of a specific date for the telephone conversation, we point out that on page thirty-one of the affidavit it expressly states that "[o]n or about *April 28, 1989,* Affiant Dilbeck was present during a consensually monitored telephone call placed by K—— L——F——, ... to telephone number 817/692–1232, the business/residence of ... DAVID BRADLEY BILLS."

■■■ Because probable cause requires only a probability of criminal activity, not an actual showing of such activity, *Guerra,* 760 S.W.2d at 688, we find that the above quoted portions of the affidavit, along with the pen register results, presented a substantial basis for the judge to believe prob-

able cause existed that Bills was committing, had committed, or was about to commit a felony offense under the Controlled Substances Act, and that particular communications concerning that offense would be obtained through the interception.

■■■ As to the forty-three page long affidavit of Officer Holland submitted in support of the June 5, 1989 application, Bills asserts that it is "wholly conclusory and based on alleged information that, by its very nature, is stale." However, Bills does not point out which allegations contained in the forty-three pages are "conclusory" and "stale." Thus, we are unable to effectively address his claim. Bills also argues that the affidavit is insufficient because "it primarily draws on the wiretap results from the interception order arising from the May 18th Affidavit. Said results being the fruits of illegal covert activity, the fruits of this Affidavit are likewise illegal and should be suppressed." Since we found the May 18, 1989 affidavit sufficient to show probable cause, we need not address Bills's claim regarding "illegal fruits" of the prior wiretap.

We overrule Bills's sole point of error and affirm the judgment of the trial court.

going numbers dialed from that line. *See* Tex. Code Crim.Proc.Ann. art. 18.21 § 1(9) (Vernon Supp.1993).